[Nos. 11904-1-III; 12641-2-III.   Division Three.   June 10, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. GREGORY
CECIL EARLY, *Appellant.*

*In the Matter of the Personal Restraint of*
GREGORY CECIL EARLY, *Petitioner.*

*John D. Paul III,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Clark D. Colwell, Deputy,* for respondent.

SWEENEY, J. — Gregory C. Early appeals a jury verdict convicting him of first degree burglary, second degree assault, and two counts of intimidation of a witness. He contends (1) the court erred in denying a motion for a continuance to substitute privately retained counsel for his court appointed counsel; (2) he was denied effective assistance of counsel because trial counsel did not personally interview witnesses prior to trial and did not interview a key witness until the

day of trial; and (3) the court erred in not declaring a mistrial because the jury saw him in handcuffs. Pro se, Mr. Early also argues that the State violated his constitutional right to due process by failing to disclose impeachment evidence. By a consolidated personal restraint petition, Mr. Early argues that he was prejudiced by counsel's failure to (1) personally interview state witnesses, (2) investigate any immunity or privileges granted to the victim, (3) obtain a copy of the victim's medical report, (4) prepare for effective cross examination, and (5) subpoena a possible defense witness. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

On January 14, 1991, Gary Tombari met with Spokane Police Detective Ken Krogh. At the time, Mr. Tombari was on probation for burglary and theft. He told Detective Krogh that Allen Clark was dealing cocaine. Mr. Tombari arranged a $1,000 purchase of cocaine from Mr. Clark. Shortly after the purchase, Mr. Clark was arrested.

On February 26, Mr. Early, a long-time friend of Mr. Clark, went to Mr. Tombari's house with a friend, Don McNeely. At trial, Mr. Early and Mr. Tombari offered conflicting versions of the events. Mr. Early testified that he went to the residence with Mr. McNeely to collect $1,000 he had given Mr. Tombari for an ounce of cocaine. Mr. Early knocked at the door and identified himself. Mr. Tombari stepped outside and said to him: "Greg, I can get you that ounce of coke now." Mr. Early responded that he did not want the cocaine and knew that Mr. Tombari was responsible for Mr. Clark's arrest. Mr. Early testified that Mr. Tombari immediately hit him in the neck and started to run. Mr. Tombari returned carrying a crowbar which he swung at Mr. Early. Mr. Early grabbed the crowbar and hit Mr. Tombari. Mr. Early denied threatening Mr. Tombari.

According to Mr. Tombari, he was home asleep in front of the television on February 26. His wife, Suzette Cordero, was asleep in the bedroom. She awoke to banging on the back door and telephoned 911. Mr. Tombari heard her scream and

woke up. He ran to the dining room and was tackled. Mr. Early was holding Ms. Cordero by the back of her hair; he grabbed the telephone from her and punched her in the face. Mr. Tombari grabbed a crowbar and yelled, "What the hell's going on?" Mr. Early released Ms. Cordero. Mr. McNeely then struck Mr. Tombari from behind. Mr. Early struck Mr. Tombari in the head with a pipe and said, "Let's kill them now." He hit Mr. Tombari with the crowbar and said: "You testify against Allen, and we'll be back to kill you."

Mr. Early was arrested and charged with first degree burglary, RCW 9A.52.020(1)(b),[1] second degree assault, RCW 9A.36.021(1)(a),[2] and two counts of intimidating a witness, RCW 9A.72.110(1).[3] He was provided with the assistance of counsel from the Spokane County Public Defender's office. Trial was set for April 24, 1991. For reasons unclear in the record, the trial date was moved to June 3. Because of a conflict of interest at the public defender's office, Terence Ryan was appointed to represent Mr. Early on May 28. Mr. Ryan requested a continuance; trial was set for August 1.

---

[1] RCW 9A.52.020(1) provides:

"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

[2] RCW 9A.36.021(1) provides:

"A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

"(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm;"

[3] RCW 9A.72.110(1) provides:

"A person is guilty of intimidating a witness if a person directs a threat to a former witness because of the witness' testimony in any official proceeding, or if, by use of a threat directed to a current witness or a person he has reason to believe is about to be called as a witness in any official proceeding or to a person whom he has reason to believe may have information relevant to a criminal investigation, he attempts to:

"(a) Influence the testimony of that person; or

"(b) Induce that person to elude legal process summoning him to testify; or

"(c) Induce that person to absent himself from such proceedings."

On July 29, Mr. Early retained a private attorney to represent him at trial. On July 30, the attorney filed a notice of appearance and motion to substitute. On August 1, Mr. Early moved to continue the matter for 30 days. The State objected to the motion claiming hardship if the matter was again continued because witnesses were available and ready to proceed. The prosecutor said that one state witness had been "turned" by the prosecution and therefore the relationship was tenuous. He summarized the State's position: "So, as time goes on we're in more and more jeopardy of — of having a weaker case rather than maintaining the status quo for both parties."

At the hearing, the State expressed concern about Mr. Ryan's association with James Parkins, a former legal partner who had previously represented Mr. Tombari. Mr. Ryan responded that he did not believe a conflict of interest existed[4] and that his legal partnership with Mr. Parkins terminated in March 1987.

Mr. Early then expressed concern for his witnesses who felt "there [was] a conflict of interest with Terry Ryan" being his attorney. He claimed his witnesses were concerned about Mr. Tombari's association with Mr. Ryan's office; "they're afraid of their lives of the fact that if they come in and be my witnesses that they're scared of their life." The prosecutor characterized Mr. Early's assertion as self-serving and expressed satisfac-

---

[4]Mr. Ryan stated:

"I have been in partnership with Mr. Parkins in the practice of law. I am currently in partnership with Mr. Parkins in the ownership of the building which we occupy. Also, for the record, Mr. Parkins has represented Gary Tombari and apparently represented his girl friend and/or wife in various matters, including felony matters of which Mr. Tombari had been accused and convicted . . .

"I have never represented Mr. Tombari, nor have I ever done any legal work for him. The most that I can say to the Court that possibly happened was that I answered the telephone when Mr. Tombari called. Further, I have never reviewed any of Mr. Parkins' files regarding Mr. Tombari. My information regarding Mr. Tombari comes from my review of the Superior Court files in Spokane County regarding felony convictions."

tion that no conflict existed.[5] The court ruled there was no conflict of interest.[6] The motion for continuance to substitute private counsel was denied. The jury found Mr. Early guilty.

## MOTION FOR CONTINUANCE

Substitution of Counsel. Mr. Early first contends he was denied his Sixth Amendment right to retain counsel of his own choosing because the court denied his motion for a continuance.

■ A defendant has the right to retain counsel of his choice and may be unlawfully deprived of the right by a denial of a motion for continuance. *State v. Chase*, 59 Wn. App. 501, 506, 799 P.2d 272 (1990) (citing *Wheat v. United States*, 486 U.S. 153, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988)). The right to retain counsel of one's choice, however, is limited — the assertion of the right must be made within a reasonable time before trial. *Chase*, at 506. "In the absence of substantial reasons a late request should generally be denied, especially if the granting of such a request may result in delay of the trial." *Chase*, at 506 (quoting *State v. Garcia*, 92 Wn.2d 647, 656, 600 P.2d 1010 (1979)); *State v. Staten*, 60 Wn. App. 163, 169-70, 802 P.2d 1384, *review denied*, 117 Wn.2d 1011 (1991).

Right to a Continuance. A criminal defendant, however, is not entitled to a continuance as a matter of right. *State v.*

---

[5]The prosecutor advised the court that there was "no financial basis between the association of Mr. Ryan's representation of Mr. Early and the past representation of Mr. Parkins of Mr. Tombari . . .". He further stated that "there doesn't appear to be any conflict as long as Mr. Ryan has never been privy to any information and is not now, nor will he be during the course of this trial be privy to any information that would not otherwise be gained, but through Mr. Parkins' representation of Mr. Tombari, there would not appear to be a conflict."

[6]The court ruled that "I would find there has not been a showing of a conflict of interest. I would specifically find that Mr. Ryan's association with Mr. Parkins is a financial interest in a building that since 1987 they have not been partners. That he has not been shown to be privy to Mr. Parkins' files. That he has not had any dealings with Mr. Tombari. That he has no association with Mr. Tombari at this time, and therefore, there was no conflict."

*Kelly*, 32 Wn. App. 112, 114, 645 P.2d 1146, *review denied*, 97 Wn.2d 1037 (1982); 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1901 (1984). The trial court in exercising its discretion considers various factors including diligence, due process, the need for an orderly procedure, and the possible impact on the trial. 12 R. Ferguson, at 361-62. It may also consider whether prior continuances have been granted. *State v. Barnes*, 58 Wn. App. 465, 471, 794 P.2d 52 (1990), *aff'd in part, rev'd in part*, 117 Wn.2d 701, 818 P.2d 1088 (1991). Denial of the motion will not be disturbed absent a showing that the defendant was prejudiced or that the result of the trial would likely have been different had the motion been granted. *Kelly*, at 114.

Because appointed counsel was prepared to try the case and the witnesses and the jury were ready, there was no abuse of discretion in the court's denial of a motion for a continuance to retain private counsel made on the morning of trial in *State v. Young*, 11 Wn. App. 398, 523 P.2d 946 (1974). Similarly, in *State v. Wilkinson*, 12 Wn. App. 522, 530 P.2d 340, *review denied*, 85 Wn.2d 1006 (1975), the trial court's denial of a request on the morning of trial for a continuance to substitute counsel was held not to be an abuse of discretion.

Here, prior continuances had been granted.[7] State witnesses were available and ready to proceed. Because one had been "turned" by the prosecution, the relationship was "tenuous". The State argued that a fourth continuance would not have "maintain[ed] the status quo for both parties." Court appointed trial counsel was ready to proceed, as were the witnesses. Mr. Early, moreover, had 6 months to retain private counsel, between his February arrest and the trial date. "A motion for continuance to secure or replace counsel will routinely be denied where the accused's lack of representation is attributable to his own lack of diligence in procuring

---

[7]The State argues that three prior continuances had been granted. Our review of the record indicates that at least two continuances were granted. It is not relevant to our holding whether two or three prior continuances had been granted.

or replacing counsel . . .". 12 R. Ferguson § 1913, at 375. The court did not abuse its discretion.

Conflict of Interest. Mr. Early further asserts the court erred in denying his motion for a continuance because of what he perceived as a conflict between Mr. Ryan and Mr. Parkins. His position is that Mr. Ryan was required to withdraw pursuant to RPC 1.9.[8]

An attorney has a duty to former clients and to former clients of the law firm of which he or she is a member. *Kurbitz v. Kurbitz*, 77 Wn.2d 943, 945-46, 468 P.2d 673 (1970). An attorney should be disqualified for the appearance of a conflict of interest (1) when a pending suit is substantially related to matters on which the attorney or someone in his association previously represented the former client, and (2) when, even though the attorney did not represent the movant, he had access to these material confidences. *Intercapital Corp. v. Intercapital Corp.*, 41 Wn. App. 9, 11, 700 P.2d 1213, *review denied*, 104 Wn.2d 1015 (1985). A determination of the applicability of relevant Rules of Professional Conduct is a question of law. *Eriks v. Denver*, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992).

Mr. Tombari is Mr. Parkins' former client, not Mr. Ryan's. Even assuming Mr. Early's interests are materially adverse to those of Mr. Tombari, the matters involved in this representation are not the same or substantially related. Mr. Ryan and Mr. Parkins have not been in a law partnership since March 1987. Their only relationship at the time of trial was joint ownership of a building. Mr. Ryan has never represented Mr. Tombari nor would he have acquired confidences material to the instant matter. The proscriptions of RPC 1.9 were not violated.

---

[8] RPC 1.9 provides:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

"(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit."

## EFFECTIVE ASSISTANCE OF COUNSEL

Mr. Early contends he was denied effective assistance of counsel because trial counsel failed to personally interview the victims, Mr. Tombari and Ms. Cordero. He argues that even though counsel had an investigator interview them, that was not a substitute for a personal interview by defense counsel. He further asserts that he was denied effective assistance of counsel because Mr. Ryan did not present the testimony of certain witnesses and did not interview one witness until the day of trial. Mr. Early urges that the presumption of trial counsel's competence may be overcome by a showing that counsel failed to conduct appropriate investigations. *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

The test for ineffective assistance of counsel is whether (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) this deficiency prejudiced the defendant. *State v. Rosborough*, 62 Wn. App. 341, 348, 814 P.2d 679, *review denied*, 118 Wn.2d 1003 (1991). A criminal defendant has the burden of showing that counsel's performance was deficient. To establish prejudice, a defendant must show a reasonable probability that but for counsel's deficient performance, the result would have been different. *Rosborough*, at 348 (citing *State v. Leavitt*, 49 Wn. App. 348, 359, 743 P.2d 270 (1987), *aff'd*, 111 Wn.2d 66, 758 P.2d 982 (1988)).

On the first day of trial, Mr. Early gave Mr. Ryan a list of seven witnesses he wanted to have testify at trial. The State moved in limine to suppress the testimony of many of the witnesses. After the State rested, Mr. Ryan informed the court that several of the witnesses could not be located and that he had spoken with several others. Some had no interest in being involved and did not pick up subpoenas he left at his office. Mr. Ryan made an offer of proof that two of the witnesses would have testified that they had purchased drugs from Mr. Tombari and that Mr. Tombari has a terrible reputation in the community for honesty. Mr. Ryan informed the court that he had spoken to Mr. McNeely at length. Three of the seven witnesses testified at trial.

■ While a trial counsel's failure to conduct appropriate investigations may indicate deficient performance, *State v. Visitacion*, 55 Wn. App. 166, 174, 776 P.2d 986 (1989), use of investigators to interview witnesses and victims in criminal prosecutions is common practice and does not suggest counsel's performance fell below an objective standard of reasonableness. *See State v. Yates*, 111 Wn.2d 793, 765 P.2d 291 (1988) (defense investigator interviewed witnesses); *State v. Wilson*, 29 Wn. App. 895 (investigator interviewed victim), *review denied*, 96 Wn.2d 1022 (1981). Competency of counsel is not measured by the result. *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). Moreover, our review of the record supports a finding that trial counsel's performance was highly competent and reflected substantial criminal trial experience.

■ Mr. Early's assertion that trial counsel's performance was deficient because certain witnesses were not called or that he was denied effective assistance because trial counsel did not interview a witness until the day of trial is without merit. The decision to call witnesses is a matter of legitimate trial tactics and does not support a claim of ineffective assistance of counsel. *Byrd*, at 799. Mr. Early did not provide his attorney with a list of witnesses until the day of trial. His argument ignores the fact that trial counsel made an offer of proof regarding the proffered testimony and the court ruled the testimony inadmissible because specific instances of conduct, for the purpose of attacking a witness' credibility, may not be proved by extrinsic evidence. ER 608(b). Finally, even though Mr. Ryan may not have interviewed Mr. McNeely until the date of trial, the record indicates his direct examination of Mr. McNeely at trial was vigorous and extensive. Mr. Early was not denied effective assistance of counsel.

## DENIAL OF MOTION FOR MISTRIAL

Mr. Early contends the court erred in not ordering a mistrial because the jury panel saw him in handcuffs. He argues this was failure to preserve and maintain courtroom decorum which jeopardized his right to an impartial jury and

warranted a mistrial. *State v. Crawford*, 21 Wn. App. 146, 584 P.2d 442 (1978), *review denied*, 91 Wn.2d 1013 (1979).

■ A trial court should grant a mistrial only when a defendant "has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (quoting *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986)); *State v. Post*, 59 Wn. App. 389, 395, 797 P.2d 1160 (1990), *aff'd*, 118 Wn.2d 596, 826 P.2d 172, 837 P.2d 599 (1992). We review the trial court's ruling on a motion for mistrial for an abuse of discretion. *State v. Essex*, 57 Wn. App. 411, 415, 788 P.2d 589 (1990); *State v. Clemons*, 56 Wn. App. 57, 62, 782 P.2d 219 (1989), *review denied*, 114 Wn.2d 1005 (1990).

■ Even though handcuffing should not be permitted except to either prevent escape, prevent the accused from injuring others or to maintain a quiet and peaceable trial, *State v. Ollison*, 68 Wn.2d 65, 69, 411 P.2d 419, *cert. denied sub nom. Wallace v. Washington*, 385 U.S. 874 (1966), Mr. Early's mere appearance in handcuffs during jury selection does not indicate the incident "inflamed or prejudiced" the jurors against Mr. Early. The court did not err.

### DISCLOSURE OF EVIDENCE

Pro se, Mr. Early argues his right to due process was violated by the State's failure to disclose impeaching evidence about the victim. *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

The prosecutor has the responsibility to disclose information to the defense, including "any material or information within [his] knowledge which tends to negate defendant's guilt as to the offense charged." CrR 4.7(a)(3); *see State v. Coe*, 101 Wn.2d 772, 784, 684 P.2d 668 (1984). However, "[b]reach of this duty does not amount to a constitutional error unless the omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist." *State v. Bebb*, 44 Wn. App. 803, 817, 723

P.2d 512 (1986) (citing *State v. Campbell*, 103 Wn.2d 1, 17, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985)), *aff'd*, 108 Wn.2d 515, 740 P.2d 829 (1987).

The jury was informed that Mr. Tombari had a 1989 theft conviction and a 1978 burglary conviction. Vito Tombari testified that his brother was doing "everything he can to see that [Mr. Early] goes to prison, so he wouldn't have to pay him back." Annette Tombari testified that her brother has a bad reputation for truth and that she does not "like the things Gary does." The picture of Mr. Tombari as an unsavory character with a motive to lie was amply painted for the jury. There is no error.

### PERSONAL RESTRAINT PETITION

By consolidated personal restraint petition, Mr. Early asserts he was prejudiced by trial counsel's failure to personally interview state witnesses; defense counsel's failure to investigate any immunity or privileges granted to Mr. Tombari; and counsel's failure to obtain a copy of Mr. Tombari's medical report. Further, he asserts counsel was not prepared for effective cross examination because of his failure to interview and investigate Detective Krogh. Finally, he asserts defense counsel failed to investigate and to summon the presence of possible defense witness Mr. Clark.

The above arguments are a combined reiteration of Mr. Early's pro se contentions and the arguments advanced by his counsel to the effect that he was denied effective assistance of counsel. As discussed, Mr. Ryan's performance was not deficient.

Mr. Early's convictions are affirmed.

THOMPSON, A.C.J., and MUNSON, J., concur.

Review denied at 123 Wn.2d 1004 (1994).