# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>      Respondent,<br><br>  v.<br><br>ANTHONY T. CLARK,<br><br>      Appellant. | No.  45203-1-II<br><br>UNPUBLISHED OPINION |

BJORGEN, J. — Anthony Clark appeals his convictions for residential burglary, third degree theft, and third degree malicious mischief.  Clark contends that the trial court abused its discretion when it (1) refused to order a second competency hearing after his attorney represented to the court that Clark was unable to assist in his defense, (2) failed to accommodate his developmental disabilities by not ordering a continuance to enable Clark to enlist the services of a cognitive aide, and (3) excluded expert testimony about Clark's suggestibility and the consequent possibility that he had falsely confessed.  Alternatively, Clark argues that (4) the trial court erred by imposing conditions of probation after sentencing him to the maximum term for the third degree theft and malicious mischief convictions.

We hold that (1) the trial court exercised its discretion on tenable grounds when it refused to order a second competency hearing given the record before it, (2) any error in denying the continuance was constitutionally harmless, (3) any error in excluding the expert's testimony was also constitutionally harmless, and (4) the trial court erred when it purported to impose

conditions of probation after sentencing Clark to the maximum term of confinement for the third degree theft and malicious mischief convictions. Consequently, we affirm Clark's convictions, but remand with orders to strike the erroneous conditions of probation.

FACTS

I. THE BREAK-IN AND THE INVESTIGATION

In April 2010, Patricia Conine returned from work to find a crime scene in her apartment. Burglars had forced open a ground floor window, entered her apartment, ransacked it, and taken Conine's personal property, including a cell phone, a digital video disc player, jewelry, and loose change.

Conine called police. Forensic investigators processed the scene and found two prints of note. They discovered the first, a fingerprint, on a screen removed from the window used to enter Conine's apartment. They found the second, a palm print, on Conine's television. The television, which Conine had bought less than two months before, had been moved during the break-in.

Soon thereafter, at nearby Lincoln High School, several students bragged about having committed the burglary. This group included Clark and Hector Escobar. Clark displayed jewelry he claimed the group had taken during the robbery; other group members also showed off allegedly stolen property. The bragging came to the attention of Lincoln High School's resource officer, who alerted Tacoma police.

Detective Robert Baker, who was investigating a different burglary possibly involving Clark, contacted him. Clark admitted he had helped Escobar and others burglarize "a grayish apartment." III Verbatim Report of Proceedings (VRP) at 274-76. Clark explained that after they decided to burglarize the apartment when walking by, Escobar proceeded to remove the

window screen. Clark then crawled through the window, unlocked the apartment door to let the others in, and then stood as the burglars' "lookout." III VRP at 277. Baker then asked Clark to take him to the residence that Clark burglarized. At this point, Baker did not know that the Conine burglary had been reported.

Clark showed Baker the apartment he had helped to burglarize and the window he had used to enter the apartment. Clark and Baker returned to Lincoln High School where Clark gave a recorded statement about the incident.

The State charged Clark with one count of residential burglary in violation of RCW 9A.52.025, one count of third degree malicious mischief in violation of RCW 9A.48.090(1)(b) and .090(2)(c), and one count of third degree theft in violation of RCW 9A.56.020(1) and .050(1), (2).

## II. THE COMPETENCY PROCEEDING BEFORE JUDGE CUTHBERTSON[1]

The question of Clark's competency to stand trial was a major focus of the pretrial proceedings in his case. Clark's counsel moved for a competency evaluation shortly after the State filed charges, and the trial court ordered an evaluation at Western State Hospital. After that evaluation, the parties contested the issue of Clark's competence to stand trial during a multiple day hearing before Judge Cuthbertson.

Dr. Ray Hendrickson, who had evaluated Clark at Western State Hospital, testified for the State at the competency hearing. Hendrickson testified that Clark had no symptoms of "a major mental illness," but showed moderate developmental disabilities. VRP (May 11, 2012) at 34-35, 49. However, Hendrickson testified that Clark was high functioning such that his

---

[1] Clark's case proceeded before Judges Cuthbertson, Nelson, McCarthy, Chushcoff, and Hickman. We refer to the trial court using the judge's name for clarity.

developmental disabilities could more properly be classified as mild in effect. In fact, Hendrickson testified that Clark demonstrated a capacity for abstract reasoning and its application to his case. Hendrickson also testified that, during his evaluation of Clark, Clark demonstrated an understanding of the legal process, legal concepts, and the charges against him. Clark's attorney sat in on the evaluation, and Hendrickson watched the two interact, allowing Hendrickson to opine that Clark could communicate with his attorney, work with her, and assist her in his defense. Hendrickson also testified that Clark had shown that his disabilities did not render him suggestible to verbal or nonverbal signals from those asking him questions, although Hendrickson admitted that he did not specifically test for suggestibility. Finally, Hendrickson testified that Clark did not require trial accommodations any more than the typical defendant.

Dr. Brent O'Neal testified for Clark at the competency hearing. O'Neal testified that he measured Clark as having a low intelligence quotient associated with mild retardation. Other tests performed by O'Neal indicated that Clark's "language skills in general [were] markedly deficient." VRP (May 30, 2012) at 75. Nevertheless, O'Neal testified that Clark was competent to stand trial. However, O'Neal testified that Clark's developmental disabilities rendered him highly susceptible to verbal or nonverbal cues from people, leading him to be untruthful under questioning. O'Neal also testified that Clark's verbal difficulties would require accommodations at trial; specifically, giving Clark additional time to communicate with his attorney and limiting the manner in which he was cross-examined.

In his oral ruling, Judge Cuthbertson stated:

> I'm going to find, Mr. Clark, that I believe you do, I think, have the capacity to understand the nature of the proceedings against you, that you – and also, I'm going to enter a finding that I believe you have the capacity to assist in your defense, but that the Court needs to make some accommodations to make sure that you have a fair trial.

4

And before we go to trial, we will have motions in limine and have discussions about the accommodations that I intend to make–so I'm going to not hide the ball–and let you know that I intend to not rush through trial and make it slow, so you have a chance to ask questions of [counsel], and she has a chance to explain what's going on to you in a way that you can understand.

The other thing I'm going to do is I'm going to talk to the lawyers about the rules of evidence, and should you decide to testify, how the examination should go. I believe I have the inherent authority or the Court has inherent authority under Evidence Rule 611, which I don't expect you to know about that, but it says I can decide how the questions are asked. I can ask questions like I did today. I can tell the lawyers how to ask the questions to some extent, so I'm going to consider that and we'll talk about that before trial, about those accommodations, and any other accommodations that would be necessary to make sure it's a fair trial.

VRP (May 30, 2012) at 112-14.

Judge Cuthbertson later entered an order finding Clark competent. This order did not include any findings or conclusions about the necessity of accommodations.

### III. OTHER PROCEEDINGS BEFORE JUDGE CUTHBERTSON

The parties again appeared before Judge Cuthbertson on November 26, 2012, the date scheduled for the start of trial. By this point, the parties were discussing a parallel prosecution in which the State had charged Clark with murder and how the litigation of various issues between the two cases overlapped. Because of other criminal trials with higher priority, the court continued Clark's trial date until February 2013. Clark's attorney renewed her objection to the court having found Clark competent at the hearing.

When the parties appeared before Judge Cuthbertson in February 2013, he again stated that other older criminal trials with higher priority had precedence. To ensure Clark's right to a speedy trial, Judge Cuthbertson stated his intention to assign the case to Judge Nelson, who was familiar with Clark and his competency issues as the judge presiding over his murder trial.

However, Clark filed an affidavit of prejudice against Judge Nelson, which was granted, and the presiding criminal judge assigned Clark's case to Judge McCarthy for trial.

## IV.  THE CrR 3.5 HEARING BEFORE JUDGE MCCARTHY

Before Judge McCarthy, Clark's attorney argued that Judge Cuthbertson had ruled that Clark would receive accommodations at trial and raised the issue of Clark's competency.  The parties also informed Judge McCarthy that the order of competency did not order accommodations.  When Clark's attorney argued that the oral ruling had ordered accommodations, Judge McCarthy told her to present any requests for accommodation in a "written motion with supporting information."  VRP (Apr. 22, 2013) at 13-14.

Clark's attorney then turned to the issue of his competence.  She contended that her interactions with Clark had convinced her that he was not competent to stand trial because he could not assist in his defense.  The prosecutor represented that she had witnessed portions of Clark's murder trial and that Clark had shown adequate language skills and recall during cross-examination and that the trial court had not needed to accommodate Clark with long breaks. Clark's attorney responded by stating that Clark's attorneys in the murder trial supported her motion for a competency hearing.  The trial court denied Clark's request for another competency hearing, citing the recent order from Judge Cuthbertson and the fact that Clark had recently completed a murder trial and evidenced competency during that trial.

## V.  PROCEEDINGS BEFORE JUDGE CHUSHCOFF

Because of trial conflict issues, Judge McCarthy sent Clark's case back to the presiding criminal judge, Judge Chushcoff.  There, Clark's attorney again raised the issue of Clark's competence to stand trial.  The State noted that Clark had recently been found competent and contended that his competence was not raised by his defense counsel in his murder trial.  Clark's

attorney took the position that Judge Cuthbertson only found Clark competent assuming that accommodations would be made. She again represented that Clark's attorneys from his murder trial supported her motion for a new competency hearing. The trial court determined that Clark's attorney had not presented evidence of a change in circumstances that would invalidate Judge Cuthbertson's order and denied Clark's motion for a new competency hearing.

Clark's attorney then requested a continuance to allow her to obtain the services of a cognitive aide, a person who could communicate about what was happening at trial with Clark in language that he could readily understand. She described this as a necessary accommodation. The prosecutor represented that Clark had not needed the accommodations during his murder trial. The court noted that Judge Cuthbertson's written order did not require accommodations, noted that Clark's attorney made the motion on the eve of trial, expressed concerns about the impact of allowing Clark to use a cognitive aide on the pace of trial, and denied the motion by stating that it would be sending the case out for trial.

## VI.    TRIAL BEFORE JUDGE HICKMAN

Clark's trial ultimately occurred before Judge Hickman, beginning on May 21, 2013. Conine testified about the break-in at her apartment. She had known Clark all his life through a friendship with his mother, but testified that he had only visited her apartment two or three times, once after police processed the scene. Conine also testified that she had bought her television within two months of the break-in and that the burglars had moved it when they broke in.

The forensic investigators testified about finding the prints on Conine's window screen and her television. An examiner testified that the latent print on the window screen matched Escobar's fingerprints and that the print on the television matched Clark's fingerprints.

7

One of Clark's classmates testified about Clark and the other alleged burglars bragging about the break-in. The classmate also testified that Clark and the others had shown off items, with Clark showing jewelry, including rings, necklaces and watches. Among the jewelry Conine testified had been taken were rings and a pendant.

Baker testified that he had gone to Lincoln High School to interview Clark about his possible involvement in a different burglary and that he had no knowledge of a burglary at Conine's apartment. Baker also testified that Clark confessed to burglarizing an apartment and that Clark then directed Baker to the apartment Clark admitted burglarizing, which was Conine's. The story Clark told, that Escobar had taken the window screen off and that Clark had climbed through the window to let the others in and then acted as a lookout, was consistent with the physical evidence, such as Escobar's fingerprint on the screen.

Clark had, over the course of trial, sought permission from the trial court to allow O'Neal to testify about his suggestibility and how that could lead him to falsely confess. He renewed his objection to the trial court's denial of that motion at the close of the State's evidence. The trial court noted the objection, but did not allow O'Neal to testify.

The jury found Clark guilty of all counts. The trial court sentenced him to 18 months' confinement for the felony residential burglary conviction and 364 days' incarceration, with no days suspended, on the gross misdemeanor third degree theft and third degree malicious mischief convictions. The trial court also entered an order establishing conditions of probation, including the payment of the legal financial obligations ordered in his felony judgment and sentence. Clark appeals.

ANALYSIS

I. COMPETENCY

Clark first contends that the trial court abused its discretion when it failed to order a competency evaluation after his counsel represented to the court that Clark was unable to assist her in his defense and that the attorneys in his contemporaneous murder trial made the same claim. We disagree.

Due process forbids the conviction of a person not competent to stand trial. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 861, 16 P.3d 610 (2001) (citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). Washington has broadened the protections due process affords incompetent individuals: by statute "'[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.'" *Fleming*, 142 Wn.2d at 862 (alteration in original) (quoting RCW 10.77.050). To be competent, a defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and to assist in his [or her] defense with 'a rational as well as factual understanding of the proceedings against him [or her].'" *Fleming*, 142 Wn.2d at 861-62 (quoting *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)).

Where "there is reason to doubt" the defendant's competency, the trial court must order a competency evaluation. RCW 10.77.060(1)(a); *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991) (citing *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985)). There must be a factual basis for the reason to doubt the defendant's competence. *Lord*, 117 Wn.2d at 901. Courts consider a number of factors when evaluating whether this factual basis exists: "the 'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical

9

and psychiatric reports, and the statements of counsel.'" *Fleming*, 142 Wn.2d at 863 (quoting *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)). The trial court must give the final factor, defense counsel's statements about the defendant's competency, "considerable weight" because counsel has the "closest contact" with the defendant, and thus a unique vantage point to gauge the defendant's competence. *State v. Israel*, 19 Wn. App. 773, 779, 577 P.2d 631 (1978). Nevertheless, the attorney's representations are simply one factor, even if weighty, and not dispositive to the question before the trial court. *State v. Woods*, 143 Wn.2d 561, 604-05, 23 P.3d 1046 (2001) (citing *Lord*, 117 Wn.2d at 903).

Because the trial court is in the best position to weigh the factors used to determine whether there is a reason to doubt the defendant's competence, we review its determination for an abuse of discretion. *State v. Sisouvanh*, 175 Wn.2d 607, 621-22, 290 P.3d 942 (2012). A trial court abuses its discretion where it exercises that discretion in a manifestly unreasonable manner, meaning selecting a course of action no reasonable person would take, or if it exercises its discretion for untenable reasons or on untenable grounds, meaning it applies the wrong legal standard or bases its decision on facts unsupported by the record. *Sisouvanh*, 175 Wn.2d at 623 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). Where the trial court's decision is "'fairly debatable,'" we will not disturb its choice to order, or not order, a competency evaluation. *See Sisouvanh*, 175 Wn.2d at 623 (quoting *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979)).

As described above, Judge Cuthbertson conducted a full competency hearing and considered Clark's competency evaluation. The issue before us is whether Judge Chushcoff erred by denying a motion for a second evaluation. Before Judge Cuthbertson, the evidence about Clark's competency included expert testimony from two doctors indicating that Clark

10

could assist in his defense, as well as Judge Cuthbertson's observations of Clark. Before the other judges, that evidence included the fact that Judge Cuthbertson had adjudged Clark competent to stand trial, as well as their own observations of Clark. Each of the judges determined that, in light of this evidence, defense counsel's opinion was not sufficient to create a reason to doubt Clark's competency. Although one might analyze the evidence on which the doctors and judges relied differently, that simply shows that the issue was "'fairly debatable.'" *Sisouvanh*, 175 Wn.2d at 623 (quoting *Walker*, 92 Wn.2d at 858). The trial court did not abuse its discretion.

Further, it was not an abuse of discretion to determine that defense counsel's representations about Clark's inability to assist in his defense in the murder trial did not necessitate a second competency evaluation. While the courts will accept the representations of counsel about a defendant's competency, those are based on counsel's personal interaction with the defendant. The trial courts were free to disregard counsel's unsupported representations about statements made by the attorneys representing Clark in the murder trial, because of the lack of evidence supporting those representations. *See Gordon*, 39 Wn. App. at 441-42. Further, defense counsel's representations about her own observations simply added new evidence about the same developmental disabilities that Judge Cuthbertson found did not render Clark incompetent to stand trial. The trial court had the discretion to determine that defense counsel's representations did not warrant a new competency hearing in light of the evidence discussed above.

## II. ACCOMMODATIONS

Clark next contends that, regardless of whether the trial court erred by refusing to hold a second competency hearing, it abused its discretion when it failed to make accommodations to

ensure that he could understand the testimony at his trial. The State contends that the trial court did not abuse its discretion when it denied the one specific request for accommodation Clark made, a request for a continuance. We assume, without deciding, that the trial court erred, but hold that any error was harmless beyond a reasonable doubt.

Criminal defendants have a right to trial accommodations necessary to safeguard their rights to confront witnesses and to be present during their trial. *See State v. Gonzalez-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999) (citing U.S. CONST. amend. VI); *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014). Decisions about any needed accommodations are constitutionally commended to the discretion of the trial court.[2] *See Gonzalez-Morales*, 138 Wn.2d at 381; *United States v. Bennett*, 848 F.2d 1134, 1141 (11th Cir. 1988). An exercise of the trial court's discretion that infringes a defendant's constitutional rights is necessarily an abuse of that discretion. *State v. Strizheus*, 163 Wn. App. 820, 829, 262 P.3d 100 (2011) (quoting *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009)).

The denial of a constitutionally required accommodation is subject to constitutional harmless error analysis, *see State v. Woo Won Choi*, 55 Wn. App. 895, 902-03, 781 P.2d 505 (1989), as are violations of the rights protected by the accommodations. *State v. Jasper*, 174 Wn.2d 96, 117, 271 P.3d 876 (2012) (right to confront witnesses); *State v. Irby*, 170 Wn.2d 874, 885, 246 P.3d 796 (2011), *appeal after remand*, 187 Wn. App. 183 (2015) (right to be present). We presume constitutional error is prejudicial and the State bears the burden of showing that the error was harmless beyond a reasonable doubt. *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d

---

[2] The decision to grant or deny a continuance also lies in the discretion of the trial court. *State v. Early*, 70 Wn. App. 452, 458, 853 P.2d 964 (1993). This discretion is, however, constrained by constitutional mandates. *State v. Strizheus*, 163 Wn. App. 820, 829, 262 P.3d 100 (2011) (quoting *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009)).

400 (2013). The State may discharge this burden by showing that overwhelming untainted evidence supports a conviction. *State v. Tatum*, 74 Wn. App. 81, 87, 871 P.2d 1123 (1994).

Assuming, without deciding, that the trial court abused its discretion by refusing to order accommodations for Clark, that error was harmless beyond a reasonable doubt because the State presented overwhelming untainted evidence of his guilt. One of Clark's classmates testified that Clark bragged that he committed the burglary and that he had shown off rings and necklaces when doing so, which were among the types of items Conine testified had been taken. Conine testified that, although Clark had been to her apartment before, he was an extremely infrequent guest, visiting only once or twice before the burglary. Nevertheless, forensic technicians found Clark's palm print on Conine's television, a television she had bought two months before the burglary and which the burglars had moved. The physical evidence thus corroborated the testimony from Clark's classmate and Conine. With this evidence, any error in failing to grant the requested accommodation was harmless beyond a reasonable doubt.[3]

### III. EXPERT TESTIMONY

Clark also contends that the trial court erred by excluding O'Neal's testimony about Clark's suggestibility and the consequent possibility that he falsely confessed in order to please the interrogating officer. Assuming, without deciding, that the trial court abused its discretion by excluding O'Neal's testimony, any error was harmless.

The constitution guarantees each defendant "the right to present [his or her] version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Consistently with that right,

---

[3] We assume, without deciding, that Clark's confession to Baker was tainted. Consequently, we do not consider the confession for purposes of harmless error review.

we may not "exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence" without a valid justification for doing so. *Crane v. Kentucky*, 476 U.S. 683, 690-91, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). We generally review a trial court's decision to admit or exclude evidence or to allow expert testimony for an abuse of discretion. *Strizheus*, 163 Wn. App. at 829; *see State v. Rafay*, 168 Wn. App. 734, 783-84, 285 P.3d 83 (2012), *cert. denied*, 134 S. Ct. 170 (2013). However, we review de novo whether the trial court's exclusion of evidence infringes the defendant's right to present a defense, and any such infringement would constitute an abuse of discretion. *Strizheus*, 163 Wn. App. at 829 (quoting *Iniguez*, 167 Wn.2d at 280).

Assuming, without deciding, that the trial court infringed Clark's right to present a complete defense by excluding O'Neal's testimony about his suggestibility, the error was harmless. As we have described above, overwhelming untainted evidence supported the verdict.

## IV.    SENTENCING

Finally, Clark contends that the trial court imposed a sentence that exceeded the punishment authorized by law. Specifically, Clark claims that the sentencing court ordered probation despite the fact that it sentenced him to the maximum term allowed for the felony residential burglary, gross misdemeanor third degree theft, and gross misdemeanor third degree malicious mischief. The State contends that the sentencing court did not sentence Clark to probation and therefore did not err. We agree with Clark and remand this matter to the sentencing court to strike the order imposing the conditions of probation for the two gross misdemeanors.

14

A sentencing court may suspend some of an offender's sentence and instead impose probation. RCW 9.95.210(1).[4] However, where the sentencing court imposes the maximum sentence, it lacks authorization to impose probation on the offender. *State v. Gailus*, 136 Wn. App. 191, 201, 147 P.3d 1300 (2006), *overruled on other grounds by State v. Sutherby*, 165 Wn.2d 870, 204 P.3d 916 (2009).

Clark's judgment and sentence imposes the maximum term of confinement allowed by RCW 9A.20.021, 364 days, for each of the gross misdemeanor convictions, ordering these sentences to be served concurrently with his felony conviction for residential burglary. The judgment and sentence suspends none of the term of confinement for the gross misdemeanors, and the trial court did not mark the section that would have imposed probation. Nevertheless, the sentencing court entered a separate order the same day as the judgment and sentence purporting to impose conditions of probation for the gross misdemeanors. Because the sentencing court lacked the authority to impose probation for the gross misdemeanors in light of its imposition of the maximum term, the order imposing probation for the gross misdemeanors is erroneous. *Gailus*, 136 Wn. App. at 201. We remand the matter with orders to strike the conditions of probation for the gross misdemeanors.

## CONCLUSION

We affirm Clark's convictions, because the trial court did not abuse its discretion by refusing to order a second competency hearing and any error in denying requested accommodations at trial or excluding O'Neal's testimony was harmless beyond a reasonable

---

[4] RCW 9.95.210(1)(a) reads, in relevant part, that "in granting probation, the superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer."

doubt. We remand this matter to the sentencing court with orders to vacate the gross misdemeanor conditions of probation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN,

We concur:

_____
JOHANSON, C.J.

_____
SUTTON, J.