FILED
JUNE 14, 2016
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32876-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW OWEN HASTINGS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Matthew Hastings appeals the trial court's denial of his motion
for a new trial on charges of residential burglary, violation of a protection order, and theft
in the third degree. He argues that each of two trial irregularities deprived him of a fair
trial: jurors saw him being escorted from the courtroom by jail staff, thereby violating his
right to be presumed innocent; and the trial court failed to notify the lawyers of a juror
question in violation of CrR 6.15(f)(1), thereby denying him a right to counsel at a
critical stage of trial.

The two irregularities occurring at trial were harmless. For that reason, and
because Mr. Hastings raises no meritorious challenges in a pro se statement of additional
grounds, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Before spring 2014, Nancy Newman and Matthew Hastings lived together on and

off for about seven years, in a cabin she was purchasing under contract. When their relationship deteriorated, Ms. Newman obtained or renewed a protection order against Mr. Hastings on March 26, 2014. A few days later, Mr. Hastings called Ms. Newman and asked if he could stop by her house to collect his belongings. She told him that in light of the protection order he needed to contact the sheriff.

Almost a month later, on April 23, Mr. Hastings went to Ms. Newman's home while she was away and entered, using a key he claims to have had for years. In addition to picking up some of his own belongings, he took some items that Ms. Newman claims belonged to her: a jewelry hanger, some jewelry, and a dog that had lived with the couple for almost seven years. Ms. Newman had purchased the dog as a six-week-old puppy. Mr. Hasting claims she bought the dog, which he named Sparkle, as a gift for him. Ms. Newman claims she bought the puppy, which she named Riley, for herself.

Ms. Newman returned home just in time to see Mr. Hastings drive away in his van. She called the sheriff's office and reported the theft. Officer Ian Edwards, who was familiar with Mr. Hastings, located him about a mile from Ms. Newman's house. He found the dog and the jewelry with Mr. Hastings. Mr. Hastings was charged with residential burglary, violation of a protection order, and theft in the third degree.

When trial took place that October, it took only one day to select the jury, present the evidence, instruct the jurors, and deliver closing arguments. Among the evidence presented was Ms. Newman's testimony that she saw Mr. Hastings, unauthorized, leaving

2

the vicinity of her cabin, and her identification of her belongings taken and found in Mr. Hasting's possession. Mr. Hastings testified he believed the dog was his, although he intended to return it to Ms. Newman since he expected to be on the road for a time. He told jurors he took the jewelry hanger and jewelry because some of the jewelry belonged to him but was tangled up with jewelry belonging to Ms. Newman. He claimed he wanted to have his property and hers sorted out in the presence of a third party.

Following an unknown period of deliberation on that first trial day, the jurors were excused for the night. After the trial judge left the bench, the jurors began leaving, and Sergeant Garbe,[1] a member of jail staff, approached Mr. Hastings and escorted him from the courtroom. Mr. Hastings's attorney notified the court that afternoon of her concern that jurors had seen Mr. Hastings being escorted out by the sergeant.

The following morning, she provided the following record of what had happened:

> After the court left the bench and as the jurors were beginning to walk behind counsel tables toward the courtroom door, jail Sergeant Garbe loudly told Mr. Hastings, "Let's go." I was aware that jurors were only a few steps away and instructed Mr. Hastings in a whisper to wait until the jurors were out of the courtroom. I also tried to catch Sgt. Garbe's attention to discreetly ask him to wait until the jurors were out of the room, but he did not see or acknowledge me. Sgt. Garbe again told Mr. Hastings, "Let's go", causing Mr. Hastings to step towards him directly in the path of jurors who were now leaving the courtroom. Sgt. Garbe then physically took Mr. Hastings by the arm and escorted him bodily from the courtroom, literally in the middle of jurors who were also leaving. One other jail security officer was present and accompanied them.

---

[1] The sergeant's first name does not appear in the record.

3

Clerk's Papers (CP) at 87-88. Mr. Hasting's lawyer explained that she followed Sergeant

Garbe into the hallway, where she told him, "[Y]ou are supposed to wait until the jury is

out of the room." Report of Proceedings (RP) at 124. The sergeant responded, "Oh, I'm

sorry." *Id.* Since jurors were still in the vicinity, he took Mr. Hastings over to a bench

and sat there with him while the final jurors left.

Mr. Hastings argued the jail escort in the view of jurors was governmental

misconduct and the charges against him should be dismissed under CrR 8.3(b). After the

court questioned counsel and ascertained that no words were exchanged with the jurors

and there were "[n]o shackles, no handcuffs, simply [ ] the presence of staff," the court

denied the motion. RP at 125.

During deliberations later that day, the jury submitted a question to the court about

its jury instruction 12, the "to convict" instruction on residential burglary. The

instruction identified the following elements the State was required to prove:

> (1) That on or about the 23rd day of April, 2014, the defendant
> entered or remained unlawfully in a dwelling at 10246 Mill Creek Road;
> (2) That the entering or remaining was with intent to commit a crime
> against a person or property therein; and
> (3) That this act occurred in the State of Washington.

CP at 105.

The juror's question to the court was:

> Regarding "a crime" in Instruction No. 12, can that crime be[:]
> A. Violation of restraining order

4

B. Theft
C. Both
D. Just entering unlawfully.

CP at 124. Without contacting the lawyers and notifying them of the jury's question, the court responded, "You have the Court's instructions on the law. Please refer to your instructions and continue to deliberate." *Id.* Later that day, the jury returned a verdict of guilty on all counts.

Shortly after the trial, Mr. Hastings moved for a new trial, relying on both the jury's viewing of Sergeant Garbe escorting him from the courtroom and the trial court's failure to notify the lawyers of the jury's question. He contended that had his lawyer been notified of the jury's question, he would have asked the court to instruct the jury that the intent to commit a crime element of jury instruction 12 could not be satisfied by option "D.," ("Just entering unlawfully"). The court denied the motion. Mr. Hastings appeals.

## ANALYSIS

Mr. Hastings appeals the trial court's denial of his motion for a new trial, arguing he was entitled to a new trial on both grounds raised in the trial court. Under CrR 7.5(a)(5), the court may grant a defendant a new trial when it affirmatively appears the defendant was materially affected by an "[i]rregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial."

5

We review a trial court's denial of a motion for a new trial for abuse of discretion. *State v. Mullen*, 171 Wn.2d 881, 905, 259 P.3d 158 (2011). "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). Alleged violations of the right to an impartial jury and the presumption of innocence are reviewed de novo. *State v. Johnson*, 125 Wn. App. 443, 457, 105 P.3d 85 (2005).

### *Jury viewing of jail escort*

Mr. Hasting argues that when Sergeant Garbe escorted him from the courtroom in front of the jury, his right to be presumed innocent was violated.

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). "Courts have recognized that restraining a defendant during trial infringes upon this right to a fair trial for several reasons," including that it violates a defendant's right to be presumed innocent. *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle*, 425 U.S. at 503. "Courts have recognized that the accused is thus entitled to the physical indicia of innocence which includes the right of the defendant to be brought before the court with

6

the appearance, dignity, and self-respect of a free and innocent man." *Finch*, 137 Wn.2d at 844.

Courts should closely scrutinize whether a practice challenged as affecting the presumption of innocence had a negative effect on the judgment of jurors, evaluating "the likely effects 'based on reason, principle, and common human experience.'" *State v. Gonzalez*, 129 Wn. App. 895, 900-01, 120 P.3d 645 (2005) (quoting *Estelle*, 425 U.S. at 504). Handcuffing should not be authorized by the court except to either prevent escape, prevent the accused from injuring others and to maintain a quiet and peaceable trial. *State v. Early*, 70 Wn. App. 452, 462, 853 P.2d 964 (1993). The transport by jail staff of even an unshackled, unhandcuffed defendant should be done outside the presence of jurors or prospective jurors.

Nonetheless, the mere fact that a jury sees an inmate under restraint—even an inmate wearing shackles—does not mandate reversal. In *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002), our Supreme Court spoke approvingly of several earlier decisions holding that jurors' passing exposure to a defendant under restraint does not warrant a mistrial.

> In [*State v.* ]*Gosser*, [33 Wn. App. 428, 435, 656 P.2d 514 (1982)] the defendant moved for a mistrial, contending that his right to a fair trial was prejudiced when several jurors observed his shackles being removed outside the courtroom. He did not request a curative instruction and could point to nothing other than the jury's brief view of him in shackles to support his contention that only a new trial would cure the prejudice. The court affirmed the trial court's denial of the motion for mistrial. Similarly,

7

in *State v. Sawyer*, members of the jury observed a deputy handcuffing the defendant at the end of the first day of trial. This court held that the prompt admonition to the jury the following day cured the error, and affirmed the denial of motion for mistrial. *State v. Sawyer*, 60 Wn.2d 83, 371 P.2d 932 (1962). In *State v. Russell*, 33 Wn. App. 579, 588, 657 P.2d 338 (1983), a deputy sheriff stopped the defendant as he was attempting to join his attorney at a sidebar, which defendant contended created a prejudicial inference that the defendant was dangerous. The defendant did not request a cautionary instruction but instead moved for a mistrial. The Court of Appeals affirmed the trial court's denial of the motion, holding that when an error can be obviated by jury instruction, the error is waived by failing to request such an instruction.

*Id.* at 270-71. Other cases are in accord. *See State v. Ollison*, 68 Wn.2d 65, 68-69, 411 P.2d 419 (1966) (motion for mistrial denied notwithstanding that prospective jurors saw defendants being transported to courtroom in handcuffs; no prejudice shown); *State v. Jordan*, 79 Wn.2d 480, 482, 487 P.2d 617 (1971) (same result where handcuffs were placed on defendant in the presence of at least two jurors; no prejudice shown); *Early*, 70 Wn. App. at 462 (Even though handcuffing should ordinarily not be permitted, "Mr. Early's mere appearance in handcuffs during jury selection does not indicate the incident 'inflamed or prejudiced' the jurors against [him];" mistrial was properly denied.).

Our Supreme Court has placed on the defendant the obligation to object or request a curative instruction if he or she fears a jury's negative inference from the fact that the defendant is restrained. *Rodriguez*, 146 Wn.2d at 270 & n.3 (citing *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999)). Here, none was requested by Mr. Hastings, which is unsurprising. Mr. Hastings was merely taken by the arm by Sergeant Garbe, an

8

arguably ambiguous action for any jurors who noticed it; the nature of the escort did not suggest that the sergeant viewed Mr. Hastings as dangerous. An admonition by the court not to attach significance to the fact that Mr. Hastings was in custody would have clarified, to all the jurors, that a jail escort had taken place.

Because prejudice was unlikely, none is shown, and Mr. Hastings elected not to request a curative instruction, we find no abuse of discretion in the trial court's denial of a motion for a new trial on this ground.

## II. Violation of CrR 6.15 and deprivation of right to counsel at all critical stages of trial

Mr. Hastings also argues that the trial court violated court rules when it responded to a jury question without notifying counsel of the question, and that the court's violation deprived him of his constitutional right to counsel at a critical stage of trial.

CrR 6.15(f) deals with questions from the jury during deliberations. It provides in relevant part that the jury shall be instructed of its right to pose a written question, and, if a question is submitted by the jury, provides:

> The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response.

CrR 6.15(f)(1). It is uncontested on appeal that the trial court did not notify the parties of the content of the jury's question or provide them an opportunity to comment on an appropriate response. In this regard, it erred.

9

"[A]n improper communication between the court and the jury is an error of constitutional dimensions." *State v. Bourgeois*, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997) (citing *State v. Rice*, 110 Wn.2d 577, 613, 757 P.2d 889 (1988)). But the communication may be so inconsequential as to constitute harmless error. *Id.* (citing *State v. Caliguri*, 99 Wn.2d 501, 508, 664 P.2d 466 (1983)). Where the court violates CrR 6.15(f)(1), "the defendant must raise the possibility that the communication between the judge and the jury was prejudicial and the State may demonstrate that the error was harmless." *State v. Jasper*, 158 Wn. App. 518, 541, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012) (citing *Bourgeois*, 133 Wn.2d at 407). A constitutional error is harmless "if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985); *State v. Langdon*, 42 Wn. App. 715, 717, 713 P.2d 120 (1986).

"Generally, where the trial court's response to a jury inquiry is 'negative in nature and conveys no affirmative information,' no prejudice results and the error is harmless." *Jasper*, 158 Wn. App. at 541 (quoting *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980)).

Mr. Hastings attempts to distinguish *Jasper* and like cases on the grounds that "here the jury was confused by an essential element requirement" and his lawyer would have proposed and requested a response that would correct the jury's confusion. Reply

10

Br. at 6. If review of the instructions already given to the jury were flawed or confusing and required clarification, Mr. Hasting's point would be well taken. But the jury instructions were correct and clear. "Whether to give a particular instruction to the jury is a matter within the discretion of the trial court." *Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). If the trial court had notified the parties of the jury's question, it would not have abused its discretion by referring the jurors back to the existing instructions. Mr. Hastings cannot show prejudice.

Moreover, overwhelming evidence, including Mr. Hastings's own testimony, established he committed the crime of residential burglary by entering Ms. Newman's home knowing it was in violation of a protection order. We are convinced beyond a reasonable doubt that even if the parties had been notified of the jury's question and the trial court had agreed to provide the type of response suggested by Mr. Hastings, the jury would still have found Mr. Hastings guilty based on his proven unlawful entry with the proven intent to violate the protection order.

Here, too, we find no prejudice from the court's error and therefore no abuse of discretion in its denial of the motion for a new trial.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Hastings raises four.

*Dismissed claim.* Mr. Hastings's first additional ground states:

11

> On June 17th, 2014[,] Cause No. 4Z0297109 was dismissed in District
> Court, Judge Knowlton-City of Walla Walla, Wa. On June 24th[,] 2014[,]
> Count 2 Cause No. 4Z0297109 (Amended Information) by Prosecuting
> Attorney Michelle Mulhern charged me with offence [sic] that got
> dismissed, and I was convicted of from Mulherns lies and government [sic]
> mismanagement.

SAG at 1. Count 2 of the amended information charging Mr. Hastings with violation of a

protection order states the order had been issued in Walla Walla District Court cause

number 4Z0297109.

Included in our record on review is a motion and order for dismissal in that matter,

signed by Deputy Prosecuting Attorney Kelly A.B. Stevenson, moving for an order

"dismissing the *charge* in the above-mentioned matter with prejudice for the following

reason: It appears the state will be unable to prove the absence of a statutory defense

beyond a reasonable doubt." CP at 71 (emphasis added). Notably, the motion and order

bears a handwritten notation, "Vio. Pro. Order[,] Ass. 4[,] 3/25/14." *Id.* The violation of

the protection order at issue in this case, a superior court case numbered 14-1-00140-9, is

alleged to have occurred on April 23, 2014.

A related document in the record—evidently a note to prosecutor Mulhern from

Mr. Hastings, states that his attorney, Rob Olsen, "was there that day for me," meaning

the date the charge was dismissed. CP at 73. Finally, also included in the record on

appeal is correspondence to Mr. Hastings from his lawyer in the trial below (not Mr.

Olson), evidently filed with the court by Mr. Hastings, which states in part:

> I also spoke with Rob Olson, and he advises me that the district court case he represented you in is a different matter than this case.

CP at 74.

When Mr. Hasting tried to raise the asserted dismissal during trial, the State's objection and motion to strike were sustained, without any meaningful protest from his trial lawyer.

The implication of the materials in our record is that Mr. Hastings was charged with violating the protection order on March 25, 2014, and that charge was dismissed in June 2014. But at issue in the trial below was a separate violation of the protection order on April 23, 2014. If Mr. Hastings has materials outside the record that demonstrate the protection order itself was dismissed at a time and for a reason that would be a defense to count two against him, his remedy is to file a personal restraint petition (PRP).[2] *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

*Improper subpoena.* Mr. Hastings next argues the State subpoenaed one of his witnesses, Thomas Reed, for the incorrect date. The police report filed on the date Mr. Hastings was arrested states that when Mr. Hastings was located and arrested on the day of the burglary, he was sitting with Mr. Reed. According to the police report, "[t]he

---

[2] Mr. Hastings has attached materials to his SAG that cannot be considered because they are outside our record. Those would have to be submitted in support of a PRP. (We do not mean to imply that his attachments are sufficient to demonstrate a defense to count two.)

13

second subject, who gave his name as Thomas Reed, was reading scripture from a bible

and praying" during Mr. Hasting's arrest. CP at 2. It also states:

> Mr. Hastings friend, Mr. Reed, appears to have numerous mental conditions
> that would limit his cognitive ability to determine right from wrong. Mr.
> Reed's mother was called and advised she would respond to pick him up.
> Mr. Reed just continued to read and sing songs from the bible during the
> entire contact.

*Id.*

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in

the trial court: appellate courts will not entertain them. *State v. Scott*, 110 Wn.2d 682,

685, 757 P.2d 492 (1988). The reason for this rule is to afford the trial court an

opportunity to correct errors, thereby avoiding unnecessary appeals and retrials. *Smith v.*

*Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Assuming the State failed to

subpoena Mr. Reed (and nothing in our record indicates that it did),[3] the time to question

his failure to appear was trial, not appeal. Nothing in our record indicates Mr. Reed's

failure to appear was ever raised during trial. We will not consider the asserted error

further.

*Jail escort.* Mr. Hastings next reprises his appellate lawyer's jail escort argument,

but states that another officer participated in the improper escort. It does not change our

---

[3] Here again, we disregard attachments to Mr. Hastings's SAG that do not appear
in the appellate record.

14

*State v. Hastings*
No. 32876-7-III

analysis. The issue was adequately addressed by counsel and will not be reviewed again. *See* RAP 10.10(a).

*Objectionable Juror 4.* Finally, Mr. Hastings complains that after trial began, juror 4 notified the court that she recognized Ms. Newman, the victim, as her local librarian. This was brought to the attention of lawyers for both parties. Since Mr. Hastings did not ask that juror 4 be excused at that time, the issue was not preserved. RAP 2.5(a).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

15