[Nos. 20528–5–I; 23096–4–I.   Division One.   August 7, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ROLANDO VISITACION, *Appellant.*

*In the Matter of the Personal Restraint of* ROLANDO VISITACION, *Petitioner.*

*Timothy Ford,* for appellant.

*Norm Maleng, Prosecuting Attorney, Deborah J. Phillips, Senior Appellate Attorney,* and *Michael Hogan, Deputy,* for respondent.

WINSOR, J.—Rolando Visitacion appeals judgment and sentence for first degree assault. His personal restraint petition (PRP) has been consolidated with the appeal. Visitacion contends that his statement was taken and admitted in violation of his Sixth Amendment right to counsel, and that he received ineffective assistance of counsel. We remand the PRP for a determination on the merits.

On October 27, 1984, a man was shot in the back of the neck outside the South China Doll restaurant. Two eyewitnesses, N. and M., identified Visitacion as the assailant, and charges were filed against him on December 3, 1984.

Visitacion fled the scene of the shooting, and settled in Ketchikan, Alaska. In August 1986, Ketchikan Police Officer Alderson met Visitacion and engaged him in some small talk; no one mentioned the South China Doll shooting.

Alderson left and when he returned approximately 1 hour later, *Visitacion* met Alderson in the parking lot. Visitacion told Alderson that he wanted to tell him about the person he had shot down in Seattle. Alderson stopped the conversation and asked Visitacion if he would be willing to go to the police station so the conversation could be recorded. Visitacion agreed.

At the station, Alderson advised Visitacion of his *Miranda*[1] rights. Visitacion proceeded to tell Alderson about the South China Doll incident. Alderson asked Visitacion if there was a warrant for his arrest. Visitacion replied that he did not know for sure, but expected that there was a warrant.

Alderson then called the King County Prosecutor's office to find out whether there was a warrant for Visitacion's arrest. Because it was a weekend, Alderson did not receive a definite answer, so Visitacion was released. Visitacion was arrested approximately 1 week later.

Visitacion was tried before a jury. His lawyer stipulated to the admissibility of Visitacion's Alaska statement. Visitacion was convicted of first degree assault.

Visitacion contends that the Alaska statement was obtained in violation of his federal constitutional right to counsel and that the statement was thus inadmissible.[2] He argues that his Sixth Amendment right to counsel attached when charges were filed on December 3, 1984, and that questioning him without counsel present violated the sixth

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 467, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2] Although Visitacion waived the CrR 3.5 hearing and did not object to the statement's admissibility below, his constitutional contention may be considered on appeal. *See, e.g., Bellevue v. Acrey*, 37 Wn. App. 57, 63–64, 678 P.2d 1289, *rev'd on other grounds*, 103 Wn.2d 203, 691 P.2d 957 (1984); *State v. Smith*, 36 Wn. App. 133, 136, 672 P.2d 759 (1983), *review denied*, 100 Wn.2d 1040 (1984); *State v. Joseph*, 10 Wn. App. 827, 831, 520 P.2d 635, *review denied*, 84 Wn.2d 1006 (1974); RAP 2.5(a)(3).

amendment to the United States Constitution.[3] Visitacion contends that *Miranda* warnings, while adequate for the purposes of protecting his Fifth Amendment rights, did not adequately inform him of his Sixth Amendment right to counsel. Thus, he did not make a knowing and intelligent waiver of his Sixth Amendment right.

### POSTINDICTMENT INTERROGATION

A person's right to counsel during interrogation can arise from either the Fifth Amendment or the Sixth Amendment. The Fifth Amendment right against self–incrimination requires that suspects be accorded the assistance of counsel during custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 467, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). This right is upheld through the

> prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges.

*Arizona v. Roberson,* 486 U.S. 675, 685, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988). A suspect can waive the right to have counsel present during the interviews, but it must be done with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986). Thus, a state cannot use statements made by a criminal defendant unless the interrogator has informed the defendant of his or her constitutional right to counsel and the right to remain silent. *Miranda v. Arizona, supra.*

---

[3]Visitacion also contends that questioning him without counsel present violated article 1, section 22 (amend. 10) of the Washington State Constitution. Visitacion, however, did not use or even mention the interpretive principles set forth in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). We therefore decline to undertake a separate analysis of the state constitutional provision at this time. *See State v. Jones,* 112 Wn.2d 488, 498–99, 772 P.2d 496 (1989).

■ The Sixth Amendment right to counsel arises from the fact that judicial proceedings have been initiated against a suspect "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. . . . [f]or it is only then . . . that the adverse positions of government and defendant have solidified." *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972). Statements elicited from the accused after this point without the presence or aid of a lawyer may not be used against him or her at trial, regardless of the setting in which the extraction occurred, unless the State can show that the accused knowingly, voluntarily and intelligently waived his or her right to counsel. *Brewer v. Williams,* 430 U.S. 387, 404, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977); *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). Although the policy behind the Sixth Amendment right to counsel is different from that behind the Fifth Amendment right to counsel, the Sixth Amendment right is not "superior" or "greater" than the Fifth Amendment right. *Patterson v. Illinois,* ___ U.S. ___, 101 L. Ed. 2d 261, 108 S. Ct. 2389, 2397 (1988).

■ The amount of information that must be provided to a defendant before permitting the defendant to waive his or her Sixth Amendment right to counsel depends on "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage". *Patterson,* 108 S. Ct. at 2398. An attorney's role during postindictment questioning and custodial interrogation is not discernibly different. It is "largely limited to advising his client as to what questions to answer and which ones to decline to answer." *Patterson,* 108 S. Ct. at 2395 n.6. The consequence of a decision to waive one's Sixth Amendment right during postindictment questioning is the same as that associated with a waiver of one's Fifth Amendment right during custodial interrogation, namely, that the accused's uncounseled admissions could be used against the accused in subsequent criminal proceedings. *Patterson,* 108 S. Ct. at 2395. Thus,

whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning. The State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities.

*Patterson,* 108 S. Ct. at 2398.

Visitacion contends, however, that even if *Miranda* warnings are adequate in the context of postindictment questioning, the Alaska statement must still be suppressed because he was not given notice that he had been formally charged with a crime. He argues that without knowledge of a pending indictment, an accused cannot appreciate the gravity of his or her legal position or the urgency of his or her need for counsel. *See, e.g., Carvey v. LeFevre,* 611 F.2d 19, 22 (2d Cir. 1979), *cert. denied,* 446 U.S. 921, 64 L. Ed. 2d 276, 100 S. Ct. 1858 (1980).[4]

Because it appears that Visitacion knew that he was facing criminal prosecution for the shooting,[5] we will not address the question of whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid. *See Patterson,* 108 S. Ct. 2396 n.8. Moreover, an evaluation of all the circumstances surrounding the Alaska statement indicates that Visitacion knowingly waived his Sixth Amendment right to counsel, and that the Alaska statement was properly

---

[4]*Carvey v. LeFevre, supra,* conflicts with the recent Supreme Court case of *Patterson v. Illinois, supra,* and we therefore question whether *Carvey* has not been implicitly overruled by *Patterson.*

[5]The tape of the Alaska interview contains the following exchange:

"[Officer Alderson]. Let me ask you this. Is—is—do you know that there was a warrant for your arrest or anything or—

"[Visitacion]. No, I didn't know there was a warrant for me, for my arrest, but I know for sure they'd have one because something like that happened and they'd—

"[Officer Alderson]. You, in other words, you'd expect there's got to be one for you?

"[Visitacion]. Yes."

admitted. Visitacion initiated the contact with the Ketchikan police officer in the parking lot of the cannery. Visitacion brought up the incident in Seattle, and he voluntarily accompanied the officer to the police station. Visitacion was given his *Miranda* rights, and he stated that he understood those rights. We hold that the Alaska statement was properly admitted.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his PRP, Visitacion contends that his counsel's performance was so deficient as to deny him effective assistance of counsel and a fair trial. He asserts that he asked counsel to call witnesses on his behalf, and that numerous witnesses to the incident who were identifiable from police reports and statements were not contacted or called by counsel. Visitacion submitted statements from five witnesses, including M. and N., all of whom state that they were never contacted by trial counsel. Visitacion argues that M.'s and N.'s 1988 statements support his testimony that the gun went off accidentally rather than intentionally, and that if these witnesses had testified he would only have been convicted of second degree assault.

The State responds that Visitacion's trial counsel made a tactical decision not to call N. and M. because their 1984 police statements were contrary to Visitacion's version of events. The State also contends that N. and M. could not be located at the time of trial because N. and M. both engage in occupations which result in frequent absences from the Seattle area. The State produced evidence that subpoenas issued by it to compel N.'s and M.'s attendance at trial were returned as undeliverable.[6]

---

[6]Visitacion moved to strike the State's response to his PRP claiming that it did not clearly "identify . . . all material disputed questions of fact" as required by RAP 16.9. RAP 16.9 does not contain a requirement that the disputed questions of fact be set forth in a certain manner. *Cf.* RAP 10.3(a)(3). The nature of the State's challenges to Visitacion's PRP is clearly discernible from its response. In fact, Visitacion was able to identify the disputed issues and respond to them in his reply to the response. Visitacion's motion to strike is denied.

In Washington, the evaluation of a petition alleging ineffective assistance of counsel involves a 2–step process. The petitioner must first show that his or her lawyer failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. *State v. Sardinia,* 42 Wn. App. 533, 539, 713 P.2d 122, *review denied,* 105 Wn.2d 1013 (1986) (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). Second, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Sardinia,* 42 Wn. App. at 539 (citing *Strickland,* 466 U.S. at 694).

When evaluating the petitioner's claim of ineffective assistance of counsel, courts must indulge a strong presumption that counsel rendered adequate assistance, and that counsel made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689–90; *Sardinia,* 42 Wn. App. at 539. If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim of ineffective assistance of counsel. *State v. Mak,* 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986); *State v. Jury,* 19 Wn. App. 256, 262–63, 576 P.2d 1302, *review denied,* 90 Wn.2d 1006 (1978).

To establish deficient performance, Visitacion submitted an expert affidavit from a very experienced Washington criminal defense attorney. This attorney stated that under the circumstances of this case, he could not "conceive of any reason, tactical or otherwise, for not contacting witnesses," and that "[r]eliance on the police reports was no substitute for contacting these witnesses." Visitacion's expert's opinions are supported by *Hawkman v. Parratt,* 661 F.2d 1161 (8th Cir. 1981).

In *Hawkman,* trial counsel essentially limited his preplea investigation to discussing the case with the petitioner, and

securing and reviewing state investigation materials. Trial counsel made no attempt to independently contact or interview the three eyewitnesses before advising the petitioner to plead guilty. The court held that by failing to investigate the facts, petitioner's attorney failed to perform an essential duty which a reasonably competent attorney would have performed under similar circumstances. *Hawkman*, 661 F.2d at 1168–69; *accord, State v. Thomas*, 109 Wn.2d 222, 230–31, 743 P.2d 816 (1987) (counsel's failure to investigate defense expert's qualifications was an omission which no reasonably competent counsel would have committed); *Jury*, 19 Wn. App. at 263–64 (counsel's failure to acquaint himself with the facts of the case by interviewing witnesses was an omission which no reasonably competent counsel would have committed).

We are persuaded by *Hawkman* and Visitacion's expert that trial counsel's rejection of M. and N. as witnesses, based upon their police statements, without making any effort to contact or interview them, fell below the prevailing professional norms. Visitacion has thus satisfied the first step of our analysis by establishing that his lawyer's representation was deficient.

We cannot undertake the second step of the analysis because the record does not establish whether counsel's deficient performance prejudiced Visitacion. We note that N.'s and M.'s 1988 statements do support Visitacion's version of events. These statements, however, vary significantly from N.'s and M.'s 1984 police statements. N.'s and M.'s credibility, and whether they could have been located with the exercise of reasonable diligence and made to appear at trial, are questions of fact. Because this court does not determine issues of fact, we refer Visitacion's petition to the superior court for a decision on the merits pursuant to RAP 16.12.

If the superior court determines that Visitacion was not prejudiced by trial counsel's omission, the judgment and

sentence will stand. If not, Visitacion will be granted a new trial.

GROSSE, A.C.J., and WEBSTER, J., concur.