# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52236-5-II |
| Respondent, | |
| v. | |
| ADAM JOSEPH PERSELL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following an online sting operation, a jury found Adam Persell guilty of two counts of attempted first degree rape of a child[1] and one count of attempted second degree rape of a child.[2] Persell argues (1) there is insufficient evidence to support his convictions, (2) his trial counsel provided ineffective assistance by failing to object to certain testimony, and (3) the trial court erred by prohibiting Persell from having contact with his minor biological and legal children.

In addition, Persell raises several issues in a statement of additional grounds (SAG) for review. Persell argues that his sentence as a persistent offender violates constitutional protections against double jeopardy, the "substantial step" required for an attempt crime is unconstitutionally vague, the trial court erred by denying an entrapment defense, this court should adopt federal standards for an entrapment defense, the trial court erred by denying

---

[1] RCW 9A.44.073; RCW 9A.28.020.

[2] RCW 9A.44.076; RCW 9A.28.020.

Persell's motion to dismiss for outrageous government conduct, and Persell received ineffective assistance from his trial counsel.

We hold that (1) sufficient evidence supports Persell's convictions, (2) trial counsel did not provide ineffective assistance, (3) the trial court erred when it failed to consider Persell's fundamental right to parent before prohibiting contact with minors, and (4) Persell raises no reversible issues in his SAG.

Accordingly, we affirm Persell's convictions, but remand for the trial court to consider Persell's fundamental right to parent before imposing a sentencing condition prohibiting contact with minors.

FACTS

Law enforcement officers posted an advertisement on the Craigslist Casual Encounters online platform, purporting to be "Hannah," a mother of three children.[3]  1 Verbatim Report of Proceedings (VRP) (July 24-26, 2018) at 114, 127.  The posting was titled "Family Play Time!?!? – w4m," and stated, "Mommy/daughter, Daddy/daughter, Daddy/son, Mommy/son. . . . you get the drift.  If you know what I'm talking about hit me up we'll chat more about what I have to offer you."[4,5]  Ex. 9.  Persell responded that he knew what the post author was referring to and was interested.  Detective Kristl Pohl, posing as Hannah, stated that she was the mother of three young children, her offer was not role play, and she "need[ed] a man to help me teach my

---

[3] We use the law enforcement officer's undercover persona for clarity.

[4] "W4M" stands for woman for man.

[5] We preserve the original spelling and grammar in the messages.

kids the way I grew up learning about sex from my dad." 1 VRP (July 24-26, 2018) at 124-25. Hannah provided a phone number to Persell, so he could text her.

Persell texted Hannah, asking for more information about her family. Hannah stated the children were Sam, age 6; Anna, age 11; and Jay, age 13. Persell continued, asking, "Has there been any exploration or experimenting?" and stating, "I am assuming that you will want everyone to be able to play with everyone." 1 VRP (July 24-26, 2018) at 127. Hannah replied, "All the kids have had some experience. My son prefers men and just had his first bottom experience which he loved" and "Anna has a lot of experience with oral and toys but has not been fully penetrated yet. Sam has a little experience with toys and oral." 1 VRP (July 24-26, 2018) at 128. Hannah asked about Persell's experience and how he wanted to be involved with Hannah's children. Persell stated, "Was involved with my brother and sister growing up. I want to be involved with you guys in any way that you want. I'm very open and comfortable with sex." 1 VRP (July 24-26, 2018) at 129. Hannah asked if he was interested in all three children. Persell said "Yup. Into pretty much everything." 1 VRP (July 24-26, 2018) at 130. Hannah and Persell exchanged photos of themselves.[6] Persell requested photos of the children.

Hannah stated, "My rule are [sic] no pain and no anal (except for my son of course) and condoms and lube are required for the girls." 1 VRP (July 24-26, 2018) at 130. Persell said, "Definitely" and "I'm good with those rules." 1 VRP (July 24-26, 2018) at 130. Hannah asked what Persell wanted. Persell stated, "So here's the deal. I am kinda hesitant. I think I am good. You are pressing really hard for details. I am thinking you are just a guy trying to get his rocks off. So I am good. Hope you find what you are looking for." 1 VRP (July 24-26, 2018) at 133-

---

[6] "Hannah" in the photographs was portrayed by Detective Krista McDonald.

34. Hannah replied, "I'm pressing for details because I've exposed myself, telling you a lot, and you've said nothing. That's a total cop move." 1 VRP (July 24-26, 2018) at 134. Hannah sent a picture of herself with Jay and Anna that Persell had previously requested.[7] Persell stated, "Tell you what. You're in Tumwater. Do you have a min to meet up somewhere public?" 1 VRP (July 24-26, 2018) at 134-35. Hannah replied that she did not want to meet in public and asked Persell to provide details about what he wanted to do with the children.

Persell asked the ages of the children and then specifically and graphically detailed sexual acts involving all three children.[8] Persell requested a photograph of Jay's buttocks, and Hannah sent a photograph of a clothed buttocks. Persell asked for a photograph of one of the girls. Hannah declined, but invited Persell to come over, telling him to go to a mini-mart near her address.

Persell said, "I might be able to sneak away for a bit, lunch and all. Just enough for a meet and greet kinda thing." 1 VRP (July 24-26, 2018) at 139. Hannah replied, "These kind of meet and greets are the fun kind. Jay is especially excited to meet you." 1 VRP (July 24-26, 2018) at 140. Persell replied, "Nice. Me too." VRP (July 24-26, 2018) at 140. Persell went to the designated mini-mart, and sent photographs from that location. Hannah provided Persell the apartment address.

---

[7] The photographs law enforcement officers sent to Persell were of officers posing as the children, not actual children.

[8] Persell's graphic language is not reproduced here, but he described performing sexual acts on the children that included sexual intercourse and sexual contact as defined by RCW 9A.44.010(1)-(2).

Persell arrived at the apartment and Hannah met Persell at the door and let him inside. Law enforcement officers then arrested Persell. Persell was charged with two counts of attempted first degree rape of a child and one count of attempted second degree rape of a child.

The case proceeded to a jury trial. Detective Pohl testified about the text conversations described above. Detective Krista McDonald testified, among other things, about Persell's phone's ring tone, which played after Persell entered the apartment. Detective McDonald testified that Persell's ring tone was "a laughing sound" followed by "touch my d**k." 1 VRP (July 24-26, 2018) at 118. When asked how she knew it was the cell phone making that sound, Detective McDonald testified:

> I didn't turn around to look, but it was coming from his person, and then the text message tone went off a couple more times, and one of the times that the text message tone alerted from his phone was when the undercover detective sent out a test text to his phone so we would know which phone to seize as evidence.

VRP (July 24-26, 2018) at 118. Persell's counsel did not object to Detective McDonald's testimony. The trial court also admitted a video of Persell entering the apartment. During the video, Persell's cellphone's ring tone is audible. At trial, the State provided no evidence that Persell possessed condoms or lubricant when he was arrested. During closing arguments, the State referenced the ring tone multiple times to support its argument that Persell intended to commit first and second degree rape of children.

A jury found Persell guilty as charged. Because Persell had a previous conviction for second degree child rape, the trial court sentenced him as a persistent offender, resulting in his confinement for life without the possibility of release. At sentencing, Persell submitted letters from his wife and stepson stating that not being able to have contact with Persell would have a negative effect on his son and stepson. The stepson claimed that Persell was the only father he

had ever known. Nonetheless, the trial court imposed a sentencing condition that prohibited contact with all minors, including his "biological and legal children." Clerk's Papers (CP) at 312. Persell appeals his convictions and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Persell argues that his convictions are not supported by sufficient evidence. Specifically, Persell argues the evidence does not support that he possessed the requisite intent or took a substantial step toward committing the crimes of first and second degree rape of a child. We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We draw such inferences in favor of the State and interpret them most strongly against the defendant. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). Circumstantial evidence is not any less reliable or probative than direct evidence in reviewing the sufficiency of the evidence supporting a jury verdict. *Kintz*, 169 Wn.2d at 551.

To convict a defendant of attempted rape of a child, the State must prove beyond a reasonable doubt that the defendant intended to have sexual intercourse with a child, and that he

took a substantial step toward having sexual intercourse with a child. RCW 9A.44.073, .076; RCW 9A.28.020.[9] Persell argues that the intent and substantial step elements were not proved.

A.      *Sufficient Evidence Support's Persell's Intent To Rape*

Persell argues that insufficient evidence supports an intent to rape when he went to Hannah's residence. We disagree.

The requisite intent required for attempted rape of a child is the intent to have sexual intercourse with a child. RCW 9A.28.020(1); RCW 9A.44.076; *State v. Johnson*, 173 Wn.2d 895, 907, 270 P.3d 591 (2012). "Sexual intercourse" is defined as any penetration however slight, or any sexual contact between one person's sex organs and the mouth or anus of another. RCW 9A.44.010(1)(a), (c). "Sexual contact" is defined as any touching of the sexual or other intimate part of a person done for the purpose of gratifying sexual desire. RCW 9A.44.010(2).

Persell argues that the State did not prove his intent to have sexual contact with the children because he agreed to Hannah's rules and went to Hannah's address simply to meet the children. Persell argues that Hannah's rules required that he use lubricant and condoms and that he did not bring these items to the meeting. He additionally points to evidence that he told Hannah that he was on his lunch break and only wanted a "meet and greet" with her and the children. We hold that sufficient evidence supports Persell's convictions.

Persell's text messages described to Hannah in graphic detail the sex acts he wanted to perform with her children, ages six, eleven, and thirteen. Hannah set forth rules for having sex

---

[9] The difference between first degree and second degree rape of a child is the age of the intended victim. For attempted first degree rape, the intended victim must be under the age of twelve. RCW 9A.44.073. For attempted second degree rape, the intended victim must be between the ages of twelve and fourteen. RCW 9A.44.076.

with her children, to which Persell agreed. Persell followed Hannah's directions to travel to her address to meet the children. Hannah said that this meeting was "the fun kind" and Persell responded positively. 1 VRP (July 24-26, 2018) at 140.

A reasonable jury could find beyond a reasonable doubt that Persell had the requisite intent to have sexual intercourse with a child. Persell sent graphic messages describing his desire to engage in sexual intercourse and sexual contact with the children. Two hours after these graphic messages, Persell tried to meet Hannah and the children. A jury could reasonably infer that the "fun kind" of meeting included sexual contact with the children. Persell's argument that he did not bring lubricant and condoms to the meeting is an invitation to reweigh the evidence in Persell's favor. However, any rational fact finder, viewing the evidence in the light most favorable to the State, could find that Persell possessed the requisite intent to commit attempted first and second degree rape of a child beyond a reasonable doubt. Accordingly, sufficient evidence supports that Persell possessed the intent to rape the children.

B.       *Sufficient Evidence Supports that Persell Took a Substantial Step Toward Rape*

Persell also argues that the State failed to prove he took a substantial step toward committing first or second degree rape of a child. His argument here relies on the lack of intent to have sex with the children. He argues that because his plan was only to meet the children, he did not take a substantial step toward raping them. Because sufficient evidence supports Persell's criminal intent and because Persell went to the place where his crimes were to be committed with that criminal intent, we hold that substantial evidence supports that Persell took a substantial step.

To commit attempt, a defendant must take a substantial step toward the commission of a crime. RCW 9A.28.020(1). A substantial step is conduct strongly corroborative of the defendant's criminal purpose. *State v. Wilson*, 158 Wn. App. 305, 317, 242 P.3d 19 (2010). Mere preparation to commit a crime is not a substantial step toward the commission of that crime. *Wilson*, 158 Wn. App. at 317. However, "[a]ny slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." *State v. Price*, 103 Wn. App. 845, 852, 14 P.3d 841 (2000). The question of whether certain conduct constitutes a substantial step in a particular case is for the trier of fact. *State v. Workman*, 90 Wn.2d 443, 449, 584 P.2d 382 (1978).

Conduct that may be indicative of a substantial step includes physically traveling to the place where the crime may be committed. *State v. Townsend*, 105 Wn. App. 622, 631-32, 20 P.3d 1027 (2001). Once a substantial step is taken, the crime of attempt occurred. *Workman*, 90 Wn.2d at 450.

Persell compares this case to *State v. Grundy*, 76 Wn. App. 335, 886 P.2d 208 (1994). In *Grundy*, an undercover officer posing as a drug runner approached Grundy, and asked Grundy what he wanted. 76 Wn. App. at 336. When Grundy expressed a desire to purchase cocaine, the officer arrested him. 76 Wn. App. at 336. Division Three of this court reversed Grundy's conviction for attempted possession of cocaine because there was insufficient evidence of a substantial step. 76 Wn. App. at 338. This court held that the parties were merely in "the negotiation stage." 76 Wn. App. at 338. Persell argues that the State failed to prove he took a substantial step because he and Hannah were still in the negotiation stage.

9

Here, unlike *Grundy*, the evidence establishes that Persell took actions that strongly corroborated his intent to rape the children. Persell went to Hannah's address for a "fun kind" of meet and greet with the children. Persell travelled to meet the children after he agreed to Hannah's rules and discussed his sexual desires. A jury could reasonably infer that nothing remained to be negotiated between Persell and Hannah for the sex acts to take place. Taking the evidence in a light most favorable to the State, a reasonable jury could find beyond a reasonable doubt that Persell took a substantial step toward raping the children by traveling to the apartment. Accordingly, we hold that sufficient evidence supports that Persell took a substantial step toward committing his crimes. As a result, sufficient evidence supports Persell's convictions.[10]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Persell argues that he received ineffective assistance from his trial counsel when counsel failed to object to Detective McDonald's testimony regarding Persell's ring tone. Specifically, Persell argues that Detective McDonald's testimony regarding the ring tone's content was "opinion testimony." Br. of Appellant at 26. He argues that it was improper opinion testimony because it was an opinion on evidence the jury could hear for itself and because Detective McDonald did not have a sufficient factual basis to support her testimony as to the ring tone's content. Finally, Persell argues that Detective McDonald's testimony was a comment on Persell's state of mind. We hold that Persell's counsel's performance was not deficient because Detective McDonald's testimony was not opinion testimony.

---

[10] Moreover, to the extend Persell's argument hinges on the fact that he did not intend to rape the children during the specific visit, his argument fails. Persell identifies no law that imposes a restriction on the length of time between the substantial step and the intended crime.

A.      *Ineffective Assistance of Counsel Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Persell must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App.2d 520, 535, 422 P.3d 489 (2018). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Where the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the failure to object, (2) that an objection likely would have been sustained, and (3) that the trial's result would have differed had the evidence not been admitted. *State v. McFarland*, 127 Wn.2d 322, 336-37, 899 P.2d 1251 (1995)); *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

B.      *Evidentiary Principles*

A lay witness with personal knowledge may give opinion testimony if the testimony is (1) rationally based on the witness's perception and (2) helpful to a clear understanding of the

testimony or the fact in issue. ER 602; ER 701; *see State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994). No witness may give an opinion regarding the guilt of the defendant because such testimony invades the exclusive province of the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Opinion testimony is not objectionable simply because it relates to the ultimate issue in the case. *State v. George*, 150 Wn. App. 110, 117, 206 P.3d 697 (2009); ER 704. However, when a witness has insufficient factual information, the witness may not opine on another person's state of mind. *State v. Farr-Lenzini*, 93 Wn. App. 453, 462, 970 P.2d 313 (1999). Opinion testimony can be defined as testimony based on a person's belief rather than on their direct knowledge of the facts. *Demery*, 144 Wn.2d at 760.

C.    *Counsel Was Not Ineffective*

Detective McDonald testified that Persell's ring tone was "a laughing sound" followed by "touch my d**k." 1 VRP (July 24-26, 2018) at 118. Persell argues that because the ring tone is undecipherable in the video, Detective McDonald cannot testify as to what she heard. Persell is incorrect.

Detective McDonald's testimony was not an opinion. She testified regarding what she heard when Persell's ring tone sounded. Testimony regarding what Detective McDonald heard was not based on her belief. Rather, Detective McDonald testified as to her observations based on her personal knowledge because she was in the room when the ring tone played. Because Detective McDonald's testimony was not an opinion, an objection to her testimony based on improper opinion would have failed. Persell did not receive ineffective assistance from his trial counsel.

### III. NO CONTACT WITH HIS MINOR CHILDREN

Persell argues that the trial court erred by preventing Persell from having contact with his son, age five, and stepson, age sixteen. We hold that the trial court erred because it failed to consider Persell's fundamental right to parent before prohibiting contact with minors.

A sentencing court is authorized to impose and enforce crime-related prohibitions. RCW 9.94A.505(9); *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime" for which the offender has been convicted, and may include orders prohibiting contact. RCW 9.94A.030(10); *State v. Armendariz*, 160 Wn.2d 106, 113, 156 P.3d 201 (2007). A causal link between the condition imposed and the crime committed is not necessary as long as the condition relates to the crime's circumstances. *State v. Llamas-Villa*, 67 Wn. App. 448, 456, 836 P.2d 239 (1992).

We review a trial court's imposition of crime-related prohibitions for abuse of discretion. *Warren*, 165 Wn.2d at 32. A trial court abuses its discretion if its decision in imposing a sentencing condition is manifestly unreasonable or based on untenable grounds. *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001). We do not substitute our own reasoning for the trial court's reasoning, absent an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007).

Parents have a fundamental liberty interest in the care, custody, and companionship of their children. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010); *Warren*, 165 Wn.2d at 34. However, parental rights are not absolute; the State has a compelling interest in protecting children from actions that would jeopardize their physical or mental health. *Pers. Restraint of Rainey*, 168 Wn.2d at 378; *Warren*, 165 Wn.2d at 34.

When a sentencing condition interferes with a fundamental constitutional right, we engage in a more careful review of the condition. *Warren*, 165 Wn.2d at 32. Conditions that interfere with fundamental rights "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *Pers. Restraint of Rainey*, 168 Wn.2d at 374 (quoting *Warren*, 165 Wn.2d at 32).

Sentencing courts can restrict the fundamental right to parent by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children. *See, e.g.*, *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). Before imposing a sentencing condition that restricts the fundamental right to parent, a trial court must address the defendant's fundamental right to parent and set forth in the record an explanation as to whether the condition is reasonably necessary to achieve the compelling state interest of preventing harm to children. *State v. DeLeon*, __ Wn. App. 2d __, 456 P.3d 405, 407-08 (2020).

Here, the trial court prohibited contact with minors, including Persell's "biological and legal children." CP at 312. However, the trial court did not consider Persell's fundamental right to parent before imposing this condition. Further, the trial court failed to set forth an explanation as to whether the condition was reasonably necessary to achieving a compelling State interest or consider less restrictive alternatives.

We remand for the trial court to conduct the proper analysis on the record before imposing a sentencing condition which interferes with Persell's fundamental right to parent. To the extent it is necessary for the trial court to determine Persell's constitutional right to parent his

14

stepson, we note that Persell's stepson was sixteen at the time of sentencing in August 2018, and thus may have already reached the age of majority.

## IV. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Persell argues (1) that his sentencing as a persistent offender violates constitutional protections against double jeopardy, (2) the "substantial step" required for an attempt crime is unconstitutionally vague, (3) the trial court erred by denying an entrapment defense, (4) this court should adopt federal standards for an entrapment defense, (5) the trial court erred by denying Persell's motion to dismiss, and (6) Persell received ineffective assistance from his trial counsel. Persell's SAG arguments fail.

A.    *Additional Facts*

Before trial, Persell filed a motion to dismiss his case, based on outrageous government conduct. Persell's motion largely adopted the motion to dismiss of another defendant, Bryan Glant, who had also responded to the Craigslist posting.

Glant's motion alleged financial wrongdoing by Washington State Patrol (WSP) in managing and funding the Washington Missing and Exploited Children Task Force's (MECTF) "Net Nanny" sting operations. Glant claimed that the Net Nanny operations were funded through an alliance with Operation Underground Railroad (O.U.R.), a private organization seeking to eliminate child exploitation. Glant alleged that WSP Sergeant Carlos Rodriguez solicited donations from O.U.R. for the purpose of funding officer overtime pay that resulted from the Net Nanny operations. Glant argued that the relationship between MECTF, WSP, and O.U.R. caused MECTF to generate more arrests and push the individuals targeted by the stings into more severe crimes to solicit higher O.U.R. donations. Glant argued that this arrangement

15

violated the law. Specifically, Glant argued that law enforcement officers' conduct toward Glant in the sting, along with this financial arrangement with O.U.R., amounted to outrageous government conduct which violated Glant's right to due process. The trial court denied Persell's motion.

B.     *SAG Principles*

We consider only arguments not already adequately addressed as raised by the defendant's appellate counsel. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012). We do not consider matters outside the scope of the direct appeal. *State v. Barberio*, 121 Wn.2d 48, 50-51, 846 P.2d 519 (1993). We do not review matters outside the record on direct appeal. *McFarland*, 127 Wn.2d at 338. Issues involving facts outside of the record are properly raised in a personal restraint petition, rather than a SAG. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).

C.     *Double Jeopardy is Not Implicated*

Persell argues that being sentenced as a persistent offender under the Persistent Offender Accountability Act (POAA)[11] violated his Fifth Amendment right against double jeopardy because he is being punished for a previous conviction he was already punished for. We disagree.

We review double jeopardy claims de novo. *State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). The constitutional guarantee against double jeopardy protects defendants from being punished multiple times for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *Mutch*, 171 Wn.2d at 661. For purposes of a double jeopardy inquiry, where the

---

[11] RCW 9.94A.570.

legislature has authorized a punishment range for a particular crime, the resulting sentence within that range constitutes punishment only for the offense of conviction. *Witte v. United States*, 515 U.S. 389, 403-04, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995).

The POAA states that anyone convicted as a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release. RCW 9.94A.570. The definition of persistent offender includes someone who twice has been convicted of certain listed sex offenses in Washington. Former RCW 9.94A.030(37) (2012). Those listed offenses include second degree rape of a child, attempted second degree rape of a child, and attempted first degree rape of a child. Former RCW 9.94A.030(37)(b)(i).

Here, Persell's sentence of life without the possibility of release resulting from his second strike offense under the POAA does not violate his right against double jeopardy. For the present case in Thurston County, Persell was charged with and convicted of two counts of attempted second degree rape of a child and one count of attempted first degree rape of a child. In Mason County, Persell had previously been convicted of second degree rape of a child. Thus, his present convictions in Thurston County qualified as a second strike requiring a sentence of life without the possibility of release under the POAA. As a result of his Thurston County convictions, Persell did not receive a separate sentence for his previous conviction of second degree rape of a child from Mason County. *Witte*, 515 U.S. at 403-04. Rather, Persell received sentences only for his crimes in Thurston County. We hold that Persell's right against double jeopardy is not implicated here.

17

D.    *"Substantial Step" Is Not Unconstitutionally Vague*

Persell argues that the "substantial step" required for an attempt crime is unconstitutionally vague because it is not defined. We disagree. To the extent that Persell also contends he did not take a substantial step toward committing attempted child rape, we addressed this argument above.

A statute may be unconstitutionally vague if it fails to define an ascertainable standard by which a person may measure their conduct. *State v. Cozza*, 19 Wn. App. 623, 626, 576 P.2d 1336 (1978). RCW 9A.28.020(1) states that a person is guilty of attempt to commit a crime when that person, with the intent to commit a specific crime, takes a "substantial step toward the commission of that crime." In *State v. Cozza*, we held that the term "substantial step" in the criminal intent statute was not unconstitutionally vague. 19 Wn. App. at 626. We stated, "The term 'substantial step' is not a technical one so as to require definition but rather clearly advises the public that mere preparation to commit a crime is not a criminal offense." 19 Wn. App. at 626. The question of whether certain conduct constitutes a substantial step in a particular case is for the trier of fact. *Workman*, 90 Wn.2d at 449.

Here, RCW 9A.28.020 (1) provides an ascertainable standard for a person to measure their conduct. A reasonable person would not be required to guess at the meaning of a "substantial step toward the commission of that crime." We hold that "substantial step" is not unconstitutionally vague.

E.    *Entrapment Is Outside the Record on Appeal*

Persell argues that the trial court erred by not allowing an entrapment defense, and that this court should adopt federal standards for entrapment. Persell states that the trial court denied

his request for an entrapment defense in a pretrial hearing. However, the record on appeal does not contain such a pretrial hearing. Rather, the trial court considered Persell's motion to dismiss based on a due process violation for outrageous government conduct. Although the motion to dismiss and hearing on the motion discussed entrapment as related to potential due process violations, the record does not include any proposal of an entrapment instruction or attempt to argue an entrapment defense. Because we do not review matters outside the record on direct appeal, *McFarland,* 127 Wn.2d at 338, we decline to consider Persell's SAG arguments regarding entrapment.

F.      *Trial Court Properly Denied Persell's Motion To Dismiss*

Persell argues that the trial court erred when it denied his motion to dismiss based on outrageous government misconduct. We hold that the trial court did not abuse its discretion when it denied Persell's motion.

The concept of outrageous conduct is founded on the principle that "the conduct of law enforcement . . . may be 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *State v. Lively*, 130 Wn.2d 1, 19, 921 P.2d 1035 (1996) (quoting *United States v. Russell*, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973)). We review whether the trial court erred in denying a motion to dismiss based on outrageous government misconduct for an abuse of discretion. *State v. Athan*, 160 Wn.2d 354, 375, 158 P.3d 27 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Athan*, 160 Wn.2d at 375-76. When a trial court adopts a view that no reasonable person would take, then it has abused its discretion. *State v. Solomon*, 3 Wn. App. 2d 895, 910, 419 P.3d 436 (2018).

To determine whether government conduct violated due process, a trial court must assess the conduct based on the totality of the circumstances. *Lively*, 130 Wn.2d at 21. Government conduct is outrageous and violates due process only when the conduct is so shocking that it violates fundamental fairness and the universal sense of fairness. 130 Wn.2d at 19. "Public policy allows for some deceitful conduct and violation of criminal laws by the police in order to detect and eliminate criminal activity." 130 Wn.2d at 20. Dismissal based on outrageous government conduct is reserved for only the most egregious circumstances. 130 Wn.2d at 20.

In evaluating whether government conduct violated due process, courts consider several factors, including: (1) "whether the police conduct instigated a crime or merely infiltrated ongoing criminal activity"; (2) "whether the defendant's reluctance to commit a crime was overcome by pleas of sympathy, promises of excessive profits, or persistent solicitation"; (3) "whether the government controls the criminal activity or simply allows for the criminal activity to occur"; (4) "whether the police motive was to prevent crime or protect the public"; and (5) "whether the government conduct itself amounted to criminal activity or conduct 'repugnant to a sense of justice.'" *Lively*, 130 Wn.2d at 22 (citations omitted) (quoting *People v. Isaacson*, 44 N.Y.2d 511, 521, 406 N.Y.S.2d 714, 378 N.E.2d 78 (1978)).

Here, Persell moved to dismiss based on perceived outrageous government conduct and constitutional violations. In denying the motion, the trial court made detailed findings and conclusions. The trial court determined that the motion was based on two issues: (1) the alleged misconduct regarding MECTF's acquisition of funds and how that acquisition was connected to Persell's charges, and (2) the nature of the interactions between law enforcement officers and Persell. The trial court considered these issues within the *Lively* factors.

The trial court considered the totality of the circumstances and weighed all *Lively* factors. Regarding the first factor, police conduct instigating crime or infiltrating existing crime, the trial court concluded the factor was neutral because little evidence in the record provided specific information about the "landscape of Craigslist" at the time of the sting. CP at 291. During its oral ruling, the trial court stated that Craigslist might be a meeting place for consenting adults or Craigslist might be "fraught with criminal misconduct." VRP (March 26, 2018) at 64. Because the record lacked sufficient evidence, the trial court found that the first factor was neutral. For the same reason, the trial court concluded the third factor, whether the government controls the criminal activity or simply allows it to occur, was also neutral.

The trial court concluded the second factor, whether Persell's reluctance to commit a crime was overcome by pleas or solicitation, favored the State. Although the trial court recognized that Persell exhibited some reluctance in his messages, the messages as a whole showed that Persell was not reluctant to commit a crime and that his will was not overcome by persistent pleas or solicitations.

For the fourth factor, whether or not the police motive was to prevent crime or protect the public, the trial court concluded this factor strongly favored the State. The trial court examined RCW 13.60.110,[12] which allows for the solicitation of private funds for the MECTF, and RCW 9A.68.020,[13] which prohibits public employees from requesting unlawful compensation. The

---

[12] "The chief of the state patrol shall seek public and private grants and gifts to support the work of the task force." RCW 13.60.110(4).

[13] "A public servant is guilty of requesting unlawful compensation if he or she requests a pecuniary benefit for the performance of an official action knowing that he or she is required to perform that action without compensation or at a level of compensation lower than that requested." RCW 9A.68.020(1).

trial court concluded that neither statute was violated for this sting. Nonetheless, the trial court stated that "even if there were technical violations of RCW 13.60.110 or RCW 9A.68.020, or another statute, the Court still finds that overall the police motive was to prevent crime and protect the public." CP at 292.

The trial court concluded the fifth factor, whether the government conduct itself amounted to criminal activity or conduct that is repugnant to a sense of justice, favored the State. The trial court concluded that no law enforcement officer violated the law or acted in a way that was repugnant to justice. The trial court concluded, "Even if there were criminal activity in this case, it is not sufficient to justify a dismissal given the standards that apply." CP at 293.

In his SAG, Persell argues the trial court erred when denying his motion because "[t]he police instigated the crime; persistently solicited the appellant to commit the crime; the police controlled, and in fact engineered, the criminal activity; and the police committed criminal conduct in operating the 'sting operation' by corrupt profiteering and illegal fundraising without statutory authority." SAG at 5. We hold that the trial court did not abuse its discretion when denying Persell's motion to dismiss.

The trial court denied Persell's motion to dismiss, regardless of any violation of the law or criminal activity of by law enforcement officers, because he did not show that the government participated in outrageous conduct. In making this ruling, the trial court did not adopt a view that no reasonable judge would take. The record does not show whether MECTF's sting operation instigated a crime or infiltrated ongoing criminal activity. However, Persell was not hesitant in his pursuit of Hannah's children. Persell responded to the posting the same day he attempted to have sexual contact with the children. Although law enforcement officers solicited

and encouraged Persell, there is little evidence that law enforcement overcame any reluctance Persell had to commit the crimes. Because a reasonable judge could have adopted the view of the trial court, we hold that the trial court did not abuse its discretion when denying Persell's motion to dismiss.

G.      *Persell Did Not Receive Ineffective Assistance from his Trial Counsel*

Persell argues that he received ineffective assistance from his trial counsel because counsel did not (1) challenge certain phone records, (2) present a defense, and (3) pursue an entrapment defense. Persell also challenges Detective McDonald's testimony, but we addressed that argument above. We hold that Persell did not receive ineffective assistance.

To demonstrate that he received ineffective assistance of counsel, Persell must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Linville*, 191 Wn.2d at 524. Counsel is not deficient for failing to make requests that would be unsuccessful. *State v. Denny*, 173 Wn. App. 805, 811, 294 P.3d 862 (2013). We strongly presume that defense counsel's performance was not deficient. *Emery*, 174 Wn.2d at 755.

1.      *Phone Records*

Persell argues that his trial counsel was ineffective for failing to argue that law enforcement officers violated Persell's Fourth Amendment rights when it sent text messages from Persell's unlocked phone between 10:43 PM and 11:46 PM. The record contains the text log between law enforcement officers and Persell. The last text in the log is at 9:12 PM. The record does not contain the additional texts sent after 9:12 PM. Because we do not review matters

23

outside the record on direct appeal, *McFarland*, 127 Wn.2d at 338, we decline to consider Persell's argument.

2.      *Presenting a Defense*

Persell argues that his counsel was ineffective for failing to (1) present exculpatory evidence gathered by a defense investigator, (2) call witnesses regarding his work schedule, (3) follow Persell's requests to present Persell's cell phone to the jury, and (4) submit Persell's psychological evaluation.

To provide effective assistance, defense counsel must investigate the case, including an investigation of witnesses. *State v. Visitacion*, 55 Wn. App. 166, 173-74, 776 P.2d 986 (1989). Defense counsel's failure to investigate or interview witnesses, or inform the court of witness testimony can support a claim for ineffective assistance of counsel. *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991).

Here, the record on appeal does not contain the evidence gathered by the defense investigator, Persell's requests to present the cell phone, or Persell's psychological evaluation. Similarly, the record does not include what witnesses would have said regarding Persell's work schedule. Persell relied on matters outside the record to support his claim that his counsel failed to present a defense. Accordingly, we decline to consider Persell's arguments.

3.      *Entrapment*

Persell argues that his counsel was ineffective for failing to pursue an entrapment defense. Because Persell cannot show he was entitled to an entrapment defense, we hold that Persell's argument fails.

To prove the affirmative defense of entrapment, a defendant must show, by a preponderance of the evidence, that he committed a crime, that the State or a State actor lured or induced him to commit the crime, and that the defendant lacked the disposition to commit the crime. *Lively*, 130 Wn.2d at 9; RCW 9A.16.070. However, entrapment is not a defense if law enforcement officers "merely afforded the actor an opportunity to commit a crime." RCW 9A.16.070(2).

Here, Persell cannot show deficient performance because Persell cannot show by a preponderance that he was entitled to an entrapment defense. Persell's theory at trial was that he did not take a substantial step toward committing the crimes. If, at the same time, Persell argued that he was entrapped by law enforcement officers, he would have to prove that he was induced to commit a crime that he was not predisposed to commit. *Lively*, 130 Wn.2d at 9. An entrapment defense necessarily admits that the defendant committed the crimes, but was lured by the government into committing them, and thus, the defendant's conduct should be excused. *Lively*, 130 Wn.2d at 9; RCW 9A.16.070. Persell's actions were inconsistent with the elements of entrapment. Persell's defense theory was a denial of the crimes and Persell showed little resistance toward committing the crimes. Thus, Persell cannot show by a preponderance that he was entitled to an entrapment defense. As a result, Persell cannot show his counsel's performance fell below an objective standard of reasonableness by not pursuing an unsuccessful defense. *Estes*, 188 Wn.2d at 458. Accordingly, because Persell does not show deficient performance by failing to pursue entrapment, we reject his argument. Persell fails to raise any reversible issues in his SAG.

No. 52236-5-II

We hold that (1) sufficient evidence supports Persell's convictions, (2) trial counsel did not provide ineffective assistance, (3) the trial court erred when it failed to consider Persell's fundamental right to parent before prohibiting contact with minors, and (4) Persell does not raise reversible issues in his SAG. Accordingly, we affirm Persell's convictions, but remand for the trial court to consider Persell's fundamental right to parent before imposing a sentencing condition prohibiting contact with minors.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Lee, C.J.

_____
Melnick, J.